41 So.2d 209

CASSAR et ux. v. MANSFIELD LUMBER CO., Inc. et al.

No. 38985.

April 25, 1949.

Rehearing Denied May 31, 1949.

Cawthorn & Golsan, Mansfield, for plaintiffs-appellees-applicants.

R. C. Gamble, Mansfield, and Cook, Clark & Egan, Shreveport, for defendants-respondents.

McCALEB, Justice.

Anthony C. Cassar, his wife and his liability insurance carrier joined as plaintiffs to recover damages resulting from an automobile accident occurring in October 1945 on the public highway near Leesville, Louisiana when a Plymouth automobile driven by Cassar collided with a truck of the Mansfield Lumber Co. Inc. as it was in the process of overtaking and passing the truck, which was making a left turn from the highway into a gravelled cross-

road. Alleging that the accident was caused by the negligence of the truck driver in attempting a sudden and abrupt left turn into the side road without previous warning, plaintiffs sought recovery of the following damages: Mrs. Cassar $17,500 for her personal injuries; Mr. Cassar $894 for property damage and expenses incurred in the treatment of his wife's injuries and New York Underwriters Insurance Company $652.83 representing the damage sustained by the Plymouth.

The defendants, Mansfield Lumber Co. Inc. and its insurer, filed a joint answer admitting the accident and that the truck driver was acting in the course and scope of his employment. They denied liability, however, asserting that the truck driver was without fault; that he was proceeding along the highway at a slow rate of speed and that he gave a proper hand signal for the left turn in ample time to assure the safety of approaching vehicles; that the accident was solely attributable to the negligence of Cassar in that he was travelling at an excessive rate of speed; that he failed to maintain a proper lookout and have his car under control; failed to sound his horn and to observe the signal given by the truck driver. Alternatively, they pleaded the contributory negligence of Cassar in bar of plaintiffs' recovery.

After a trial in the District Court, there was judgment in favor of Mrs. Cassar for $5,000 and for the other two plaintiffs in

the amounts prayed for in the petition. Defendants appealed to the Court of Appeal for the Second Circuit and Mrs. Cassar answered asking for an increase in the award in her favor. The Court of Appeal reversed the judgment of the District Court, insofar as Cassar and his insurer were concerned, holding that Cassar was guilty of contributory negligence, barring recovery. But the court found that his negligence could not be imputed to his wife, as she was a guest without control over the operation of the automobile, and that defendants were responsible for her injuries because the truck driver was not without fault. The court, however, thought the award in favor of Mrs. Cassar was excessive and reduced it to $3,500. See 35 So.2d 797. Plaintiffs thereafter secured writs of certiorari and review and the matter has been submitted for our decision.

 Preliminarily, it is well to point out that, since defendants did not apply for and obtain a writ of review, the judgment of the Court of Appeal cannot be changed to plaintiffs' detriment. Section 11 of Article VII of the Constitution; D. H. Holmes Co. v. Morris, 188 La. 431, 177 So. 417, 114 A.L.R. 905 and cases there cited. Hence, the question respecting the negligence of the truck driver has been foreclosed by the judgment of the Court of Appeal. The only matters for consideration are (1) whether Cassar was guilty

of negligence which precluded his and his insurer's recovery and (2) whether the award for Mrs. Cassar's injuries is inadequate.

The accident occurred at about 12:00 noon on a clear day upon Highway 171 at a point approximately four miles from Leesville where the highway is intersected from the west by a gravelled road. The highway runs North and South, the paved portion being 18 feet in width abutted by gravelled shoulders. The Lumber Company's 1½ ton truck, operated by its colored driver, was proceeding north in the direction of Leesville at a speed of approximately 15 miles per hour. The Plymouth car, driven by Cassar, in which his wife, brother-in-law and a lady friend were passengers, was travelling in the same direction at an admitted speed of at least 35 miles per hour. When the truck arrived near the intersection of the gravelled road, it slowed down to about five miles per hour and proceeded to turn sharply to the left,[1] it being the intention of the driver to make a delivery of material to a house situated on the gravelled road. Just as the left front wheel and fender of the truck preempted the center line of the highway, it came in contact with the right side of the Plymouth which, at that moment, was in the act of overtaking and passing the truck. While the impact stopped the forward motion of the truck, it caused the driver of the Plymouth to lose control and the car sped on for a distance of about 50 feet, capsizing in a ditch abutting the highway.

The testimony of the truck driver is that before he attempted the left turn he looked into his rear view mirror and saw the Cassar car following him; that, momentarily before the accident, he heard a horn blow but that he nevertheless attempted the turn without looking again into his rear view mirror. The Court of Appeals found that, under these circumstances, he was guilty of violating Paragraph (a) of Rule 10, Section 3 of Act 286 of 1938 (the Highway Regulatory Act) providing that, before turning from a direct line, the driver shall "first see that such movement can be made in safety".

The Court also resolved that the evidence established that Cassar was operating his car at a speed too high under the prevailing circumstances, that is, the overtaking and passing of another vehicle. After a careful examination of the record, we think that the preponderating evidence clearly sustains this finding of fact. The truck driver stated that Cassar was travelling between 45 and 50 miles per hour at the time of the impact and a disinterested witness, Mrs. Christopher James, fixed the speed of the Plymouth as being very fast, about 60 miles per hour. True, the evidence of Cassar and his wife is to the effect that the speed was much slower (30

---

[1] The angle from the highway into the road is more than 90 degrees.

to 35 miles per hour) but when we consider the physical facts, especially with respect to the course taken by the Plymouth after impact with the slow moving truck, it seems evident that its velocity was such as to preclude the driver from having it under full control during the passing operation. Then, too, it plainly appears that Cassar violated the provisions of Rule 7 of Section 3 of Act 286 of 1938, particularly paragraph (e) thereof in that he overtook and attempted to pass the truck at an intersection of the highway.

■ Indeed, the matter which has given us great concern in the case does not pertain to Cassar's fault but whether the truck driver detected the approach of the Plymouth at a high speed at a time when he knew that it would be hazardous to make the left turn. In other words, if he discovered Cassar's peril and had a last clear chance to avert the accident, by refraining from turning left into the path of the passing automobile, defendants would be liable notwithstanding Cassar's negligence—for it is well established by the doctrine announced in Rottman v. Beverly, 183 La. 947, 165 So. 153 that contributory negligence is not always a bar to recovery even though plaintiff's negligence continues to the moment of the accident, and that, where the defendant discovers plaintiff's peril at a time when he has the means within his control to avoid a mishap and fails to do so, his negligence will be regarded as the proximate, immediate and efficient cause of the injury and plaintiff's negligence the remote cause.

The truck driver testified, under cross-examination, that, prior to the time he started the turn, he glanced into his rear view mirror and saw the automobile approaching about 120 feet to the rear; that, just as he was about to turn, he heard a horn blow; that he did not look again; that he started his turn and that, when his left front wheel went over the center line, the impact occurred. He also stated that the automobile was going 45 or 50 miles per hour at the time of the collision.

Counsel for plaintiffs argue, with much plausibility, that, since the truck driver admits that the automobile was only 120 feet behind the truck at the time he last saw it and since he concedes that he heard its horn blow momentarily before the left turn was attempted, he had discovered the fact not only that the Plymouth was attempting to overtake and pass the truck but that it was in such a perilous position at that time that its driver could not extricate himself in the event the truck attempted the left turn across the center line of the road.

■ We think that this argument is well founded for it is difficult to conceive that the truck driver was unaware, when he noticed the fast moving Plymouth 120 feet to the rear of him, that the automobile was overtaking and was about to pass him. If he had any doubt about it

at that time, he became fully cognizant of the passing operation prior to his attempted left turn because he admits that he heard the horn signal of the Plymouth before he started the turn. Thus, he was and should have been fully apprised of the fact that an accident was inevitable if he crossed the center line of the highway and he had a last clear chance to avoid it by restraining his impulse. His failure to do so renders the defendants liable.

■ In due deference to the Court of Appeal, it is apt to observe that the applicability of the doctrine of discovered peril apparently was not stressed on the rehearing before it as it is not considered or even mentioned in the opinion. And the matter has not been briefed by counsel for defendants in this Court. Be this as it may, counsel for plaintiffs not only invoked the doctrine in their application for writs, in argument and brief before this court and in their application for rehearing in the Court of Appeal but they state that the question was argued orally both in the District Court and before the Court of Appeal.[2]

■ Since we find defendants responsible, it remains only to consider the damages. The amount sued for by Cassar's insurer, representing the damage sustained by the Plymouth automobile amounting to

$652.83 is not disputed. Defendants contend that the amount of $894 claimed by Cassar, representing the value of personal effects destroyed or damaged in the accident and the medical expenses of Mrs. Cassar, have not been proved with legal certainty and that the values placed on some of the items claimed are speculative. However, the district judge was satisfied with the proof submitted by plaintiffs and we are not disposed to disturb his ruling on this question.

■ With regard to the personal injuries of Mrs. Cassar, the record discloses that she sustained ordinary contusions and bruises and a blow to her left thigh which caused a large blood clot. In addition, she claims that she suffers from traumatic neurosis as the result of the accident. The Court of Appeal felt that a judgment of $3,500 in her favor was proper and we think that it is ample.

The judgment of the Court of Appeal is, therefore, affirmed insofar as plaintiff, Mrs. Helen Cassar, is concerned; but, in all other respects, its judgment is annulled and set aside and it is now ordered that the judgment of the District Court in favor of Anthony C. Cassar and New York Underwriters Insurance Company, Inc. be reinstated and affirmed. Defendants are to pay all costs.

---

2 In this respect, the case is distinguishable from Burns v. Evans Cooperage Co., 208 La. 406, 23 So.2d 165, where the Court refused to consider the doctrine of last clear chance because it had not been invoked by pleading, testimony or argument.