GLADNEY, Judge.
This action is for damages sustained by plaintiff’s automobile in the Town of Springhill, Louisiana, when it collided with a truck driven by the defendant.
It is the second appearance of this case before us. On the former occasion, Allison v. Turner, La.App.1951, 53 So.2d 256', plaintiff had appealed from a judgment sustaining defendant’s exception of ■ no cause of action. That 'judgment was affirmed on the original hearing, but on rehearing the first opinion of this court was recalled and set aside, the judgment of the lower court was annulled, and the case remanded for further proceedings.
■ In the lower court Turner, the defendant, then answered plaintiff’s petition denying any negligence on his part and averring the collision was solely due to' the negligence of the plaintiff. By way of recon-ventional demand, he sought recovery of damages to his truck, and alternatively, plead the contributory negligence of plaintiff.
After trial the judge of the lower court concluded that both parties were guilty of such negligence as to bar their recovery. From this ■ judgment plaintiff has again appealed and the appeal has been answered by the defendant, who urges the judgment be affirmed in its rejection of plaintiff’s demands and be reversed insofar as defendant is held contributorily negligent and his reconventional demand dismissed.
The collision from which this action arises occurred at the intersection of the Springhill-Shongaloo Highway with Parkway Drive, a street in the Town of Spring-hill. At the point of collision the highway runs in an east and west direction and forms a “T” intersection with Parkway Drive which enters it from the south.
At the time of the accident the highway was dry and visibility was good. The highway was straight for several hundred feet in both directions from the point of collision.
On the morning of January 17, 1950, Turner was driving his pick-up truck westerly along the highway as he neared the intersection with Parkway Drive. He was alone in the truck at the time and anticipated making a left turn into Parkway Drive. Allison, to the rear of Turner, was traveling in the same direction as both vehicles approached the intersecting street. He was accompanied by two Negroes, Dayton 'Cooper and Rita Cooper.
Allison testified he was driving at a speed between twenty-five and thirty-five miles per hour and first observed the truck ahead of him when he rounded a curve about one-fourth of a mile east of where the accident occurred; that he continued to gain on defendant and when he reached a point forty to forty-five feet to the rear 'of the truck, and while still traveling on his righthand side -of the road he sounded his horn as evidence of his in *209 tention to overtake the defendant, pulled to his left, and was in the act of overtaking the defendant when the latter suddenly and without warning commenced a lefthand turn into the intersecting street with the result that the right front of plaintiff’s car struck the left side of the defendant’s car. He states that he first observed, defendant’s car in the act of turning to the left when the.front of his vehicle was to the left of and equal with the rear of defendant’s truck, and upon observing .defendant’s maneuver he continued to blow his horn despite which defendant persisted in his left turn, This, he says, caused him to increase his speed in order to go around defendant’s truck, but he was unablé to avoid the collision.
Turner’s testimony is that he approached the intersecting street at a speed of twenty to twenty-five miles per hour and when he reached a point about one hundred twenty feet east of the intersection he extended his left arm and signaled his intention to turn left; that he saw no one approaching from his rear and reduced his speed to about ten miles per hour and when he came within thirty feet of the intersection he again looked to the rear and seeing no approaching vehicle, he began turning left into the intersection. He stated that he had practically completed his turn, at least to the extent that his truck was headed south and partially into the intersecting street,, when his truck was struck on the left side near the door.
Plaintiff and defendant are in dispute upon several salient points. Defendant testified that before commencing his left turn he signaled his intention to do so by extending his left arm. Plaintiff denies any signal was given. Plaintiff estimated his own speed at thirty-five miles per hour when he commenced the act of passing, whereas defendant contends it was much faster and was excessive under the circumstances. Defendant denies plaintiff sounded his horn as a signal for passing.
Some corroborating evidence was offered but it is inconclusive. Dayton Cooper testified he did not see Turner’s signal for a lefthand turn. Paul Sewall said Allison passed his truck about three and one-half miles east of the collision while his truck was proceeding in the same direction at a speed of forty miles per hour. Cooper corroborated plaintiff’s testimony that the latter was traveling thirty-five miles per hour just prior to the accident. R. L. Haynes testified he was about one-fourth of a mile away from the scene of the accident when he heard the crash of the two vehicles and that immediately prior thereto he heard a horn blowing.
Bert Braley, a State Trooper and Vol Eubanks, the marshal of Springhill, were at the scené of the accident shortly after its occurrence and their testimony is substantially the same. They located the point of impact at the' intersection. They both testified Turner’s truck had partially entered Parkway Drive when struck and that damage to the truck was concentrated at the left door and left fender. They found the right front of the bumper and right front fender of Allison’s car bore the brunt of the impact. They further stated that the truck was turned clockwise to the opposite side of the highway, having moved about forty-seven feet from the point of impact to the point of rest and that the Allison car had traveled approximately one hundred twenty-five feet after the collision.
Though some of the facts are undetermined, we think it quite clear that both drivers were guilty of negligence. Plaintiff was at fault in attempting to pass the truck at an intersection and in attempting to pass without ascertaining that the driver of the forward car had understood his signal and would respect it, both acts being contrary to positive law. Defendant wás surely negligent in failing to discover the presence of Allison and in attempting to exercise a lefthand turn without using every precaution to see that such a dangerous maneuver could be safely concluded.
In our former decision herein upon resolution' of defendant’s exception of no cause of action by this Court, we observed that it is not every case of negligence or statutory violation on the part of a plaintiff that will bar his recovery. This is true because whether the act of passing at an *210 intersection is the, proximate cause is not entirely a question of law, but may involve also a question of fact, which can only be determined from the evidence adduced on trial. In this appeal plaintiff relies ex-, clusively upon his special plea predicated on the last clear chance or “discovered peril” doctrine. By so doing he thereby concedes his . negligence. We think the important legal issue herein involved concerns the relation of the last clear chance doctrine to the facts presented by this record:
In support of plaintiff’s position, the cases of Parker v. Home Indemnity Company of New York, La.App.1949, 41 So.2d 783, and Toney v. Burris, La.App.1950, 45 So.2d 438, are relied upon. Both of these cases involve facts similar to the instant case in that the defendant in each case was attempting to make a lefthand turn into an intersection as the car to the rear was attempting to pass. And in both cases the. Court applied the doctrine of last clear chance to decide in favor of plaintiff.
In Parker v. Home Indemnity Company of New York, supra [41 So.2d 788], plaintiff, who was riding a motorcycle attempted to pass defendant’s automobile as it attempted a lefthand turn in order to enter the intersecting street. The application of the doctrine was held to be justifiable because the driver of the forward car failed to take precautionary measures to observe traffic from the rear and because he knew that his rear view was imperfect. We quote the following pertinent statement from the opinion:
“Implicit in Culbertson’s own testimony is his recognition of the existence of the blind spot which interfered with a proper view to the rear. We quote the pertinent portion of his testimony as follows:
“ ‘Q. Your statement is that you can see everything behind you through the rear view mirror and the side mirror except for a small blind spot. Did you make a left hand turn off a street merely by looking .into both mirrors, without any other precaution? A. Yes, sir, because I am usually going slow and people are supposed to' keep their automobiles' and things under control at all times.
“ ‘Q. In other words, as I understand it, you are willing to rely on a look in both those rear view mirrors, one outside and one inside? A. I used to be, but I am more cautious now. I agree with you on that.’
“It is evident from the above-quoted extract of testimony that Culbertson proceeded on the theory that it was the duty of 'others to- keep their automobiles under control to such extent that they would be able to avoid a collision when he made an unsignal-ed or improperly signaled left turn. This in itself is a violent and unjustified presumption. When his knowledge of the blind spot is taken into consideration we think it logically follows that he failed to see what he could have seen- and what he should have seen by the exercise of precautionary measures which were clearly indicated under the circumstances. This failure to avail himself of the last clear chance to avoid the accident renders him liable.”
Also it is to be noted that in the cited case the collision occurred in the middle of the street, indicating the motorcycle was well forward in the act of passing defendant’s car at the moment defendant attempted the left turn.
In Toney v. Burris, supra, the facts of said case indicate clearly defendant had a knowledge of the presence of plaintiff to the rear and the collision was unquestionably due to' the failure of defendant to properly guage the distance which separated the two cars.
Cassar v. Mansfield Lumber Company, Inc., 1949, 215 La. 533, 41 So.2d 209, 212, presents another occasion where the Court applied the last clear chance doctrine to permit recovery in favor of plaintiff. Plaintiff was in the act of passing a car engaged in executing a left-hand turn. The Court permitted recovery by the plaintiff because of the testimony of the truck driver of defendant’s vehicle, who testified he had glanced into his rear view *211 mirror and saw the other automobile approaching about one hundred twenty feet to the rear and that as he was about to turn he heard a horn blow, but notwithstanding he started his turn and when, his left front wheel went -over the center line, the impact occurred. The Court said:
“We think that this argument is well founded for it is difficult to conceive that the truck driver was unaware, when he noticed the fast moving Plymouth 120 feet to the rear of him, that the automobile was overtaking and was about to pass him. If he had any doubt about it at that time, he became fully cognizant of the passing operation prior to his attempted left turn because he admits- that he heard the horn signal of the Plymouth before he started the turn. Thus, he was and should have been fully apprised of the fact that an accident was inevitable if he crossed the center line of the highway and he had a last clear chance to avoid it by restraining his impulse. His failure to do so renders the defendants liable.” ;
Apparently on the same day the Supreme Court rendered the Cassar decision, the1 same judge, Justice McCaleb, as the organ of the Court in the Cassar case, gave the opinion in Hollabaugh-Seale Funeral Home, Inc., v. Standard Accident Insurance Company, 1949, 215 La. 545, 41 So.2d 212, 215, in which plaintiff, the owner of an overtaking vehicle attempted to pass defendant’s car as it was attempting to make a left turn from Government Street into Oakwood Drive, in Baton Rouge, Louisiana. Plaintiff’s suit was dismissed as the court refused to apply the last clear chance doctrine, saying:
“Finally, counsel for plaintiff invokes the doctrine of last clear chance. Strictly speaking, last clear chance is inapplicable as the negligence of the ambulance driver continued to the moment of the accident. The kindred doctrine of discovered peril announced .by this Court in Rottman v. Beverly, 183 La. 947, 165 So. 153 and applied in Cassar et al. v. Mansfield Lumber Company, Inc., 215 La. 533, 41 So.2d 209, is not appropriate to this case because there is nothing in the testimony of Mrs. De Frances to show that, prior to the time she negotiated the left turn, she was aware of the speed of the ambulance, its close proximity and its attempt to overtake and pass her truck.”
The above cited cases generally hold that the doctrine of last clear chance may be applied in favor of the owner of the overtaking vehicle when the driver of the forward car has knowledge of the presence of the driver to the rear and, notwithstanding this fact, still undertakes the dangerous left turn. Parker v. Home Indemnity Company of New York, supra, indicates perhaps the broadest application of the rule because the driver of the forward car had full knowledge of the blind spot and that as -a consequence thereof even though he looked through his mirror to the rear, he could not be certain of complete observation and consequently he should have taken additional precautions to determine if the turn could safely be made.
In the instant case we are sure that Turner had no realization that Allison was approaching to his reár.’ At least the record furnishes no affirmative evidence thereof. This situation requires that we adhere to the holding of Hollabaugh-Seale Funeral Home, Inc., v. Standard Accident Insurance Company, supra, in which case the last clear chance and kindred doctrine of' discovered peril were held not appropriate. We think the negligence of both parties continued to the very moment of the collision and neither plaintiff nor defendant can be relieved of the consequences of their wrongful acts. Undoubtedly, the left turn was so quickly made when plaintiff’s car was so close that collision could not have been avoided by either party.
For the foregoing reasons we are of the opinion that the judgment appealed from is correct and accordingly it is affirmed at appellant’s cost.
McINNIS, J., is recused.