TATE, Judge
(dissenting).
I respectfully dissent. The majority opinion indicates logical reasons why the plaintiff may have been contributorily negligent. I do not agree, however, that the physical evidence dictates our finding plaintiff contributorily negligent, in the face of sworn testimony to the contrary, found credible by the District Court who saw and heard the witnesses.
Essentially, the District Court found that the accident occurred as testified by plaintiff: namely, tjaat he was following the defendant’s long truck-trailer combination at a place near the westernmost city limits of Port Allen at a speed of 35 mph; that the truck slowed somewhat, and plaintiff speeded to 45 mph to pass it; that when plaintiff was from 8-35 feet in the rear thereof, the truck driver suddenly without warning turned left into a small road driveway into Mim’s Grocery Store, obstructing both the left (south) lane, as well as the truck body or trailer partially obstrucing the right (north) lane; that plaintiff by instantaneous desperate reflex action pulled his car to the right or north, but was unable to avoid having the truck’s right front corner post strike the left hood or front window post, raking plaintiff’s- car, which went out of control and landed in a ditch approximately 100 feet distant from the impact. Thus, whether plaintiff was proceeding at a rate of 25 mph, or 45 mph, he could not. have avoided the .accident, as speed was not a proximate cause thereof./
Of course, the negligence of defendant’s truck driver cannot seriously be questioned;' *117 He stated he turned left into the driveway without making any signal and without a lookout to his rear, his attention being directed to his front upon an oncoming car, immediately after passing which he turned into the driveway, having slowed from a speed of 20 mph to IS mph. (On a deposition prior to trial, he said he had slowed lo about 10 mph.)
From certain uncontradicted physical facts the majority drew the conclusion that this sworn testimony, accepted by the trier •of fact, was untruthful. These physical facts are:
1. That plaintiff’s vehicle made skid-marks of 30-36 feet in length, at a slant .across the northern (plaintiff’s) portion of the highway before the point of impact, after which the skidmarks ceased;
2. That the rear wheels of the truck made skidmarks for approximately 18 feet in length in an arc following the impact; (probably, in my opinion, indicating application of the truck brakes after the impact, as testified by the truck driver in a ■discovery deposition);
3. That plaintiff’s car ended up against .a hill (burrow pit) at from 98 to 114 feet from the point of impact, and according to one witness was smashed against the hill;
4. Slight if any damage was caused the rear steel corner post of .the trailer of the truck (in my opinion, indicating that the -truck received a very slight blow);
5. Plaintiff’s 1936 Ford was demolished -when found after it come to rest crashed into the hill, and it had apparently been raked .on the lefthand side by the truck’s corner post.
6.Plaintiff himself was very badly mangled and was caught in the car as it lay after the accident, and it was necessary to disconnect the battery wires because the car was commencing to smoke.
Now the majority has indulged in hypotheses from these physical facts to find that plaintiff was proceeding at terrific speed and was a sufficient distance to the rear of the truck when it made its turn to have avoided the accident if plaintiff had been proceeding at the legal instead of an excessive speed. In my opinion, it is a serious fallacy to determine a factual matter on an appellate record by hypotheses based on what must be arbitrary assumption or exclusion of many variable factors.
For instance, the stopping distance tables use an “average” reaction time of J^th second. But in an individual instance, this may be appreciably less or appreciably more, in the vital terms of split seconds which, translated into feet distant before the accident, magnify or minimize negligence. As shown by comparison of various stopping-distance charts, there are various theoretical braking distances of vehicles after brakes are applied, depending on the braking efficiency of the vehicle (which varies from vehicle to- vehicle, and on the same vehicle at different periods of time) and on the condition and type of stopping surface, as well as varying assumptions as to reaction time.[1]
*118 It is not what may have transpired as indicated by theoretical law-library charts, it is what actually did transpire as testified to by witnesses found truthful, that determines whether or not given conduct was negligent.
Taking the same physical facts which the majority felt proved impossible the sworn testimony of a human witness, found truthful by a trier of fact, I believe on the contrary they corroborate his version of the accident.
As noted above, the truck skidmarks probably resulted not from any impact by plaintiff’s car, but from the application of the truck’s own brakes; the fact that the brakes were applied when the truck was half-turned, and thus there was both momentum toward the side-road (pulled by the tractor, which had already turned) and also momentum straight ahead (the trailer’s course had not yet completely changed, and this heavy weight upon sudden application of the brakes tended to continue westward or forward, as applied against the left or southern motion of the already-turned forward part of the long truck) caused the arcing nature of the skidmarks, which were eighteen feet in length, showing the truck went 18 feet before stopping after continuous application of brakes, and probably indicating the truck suddenly turned while still going in excess of IS mph, as testified by the truck driver. This sudden turn blocked the entire highway.
The fact that plaintiff’s skidmarks were 30-36 feet in length before the impact, but stopped at the point of impact, indicated that the brakes were released at the time of impact (when the plaintiff was knocked unconscious), causing the car to proceed unchecked into a hill or burrow-pit, where it demolished itself. If hypothetical speculation is in order, it is just as reasonable to suppose that perhaps the unconscious body of plaintiff pushed down the accelerator after the impact, as it is to suppose that plaintiff must necessarily have been a great distance behind the truck when it made its sudden turn. Certainly, the damage to this ancient car and the distance it went after the truck corner post grazed or raked its left hood and left (driver’s side) window post, are consistent with a speed of 45 mph; see Lawyer’s Motor Vehicle Chart, where at 45 mph braking distance after brakes are applied and continuously applied until stop is shown as 161.3, compared with here, brakes applied for 30-36 feet, then released, and then car came to rest 90-114’ further.
Due to the slight damage to defendant’s truck post, it is more reasonable in my opinion to assume only slight impact between the truck and the car, although the steel corner post raked through the frail 1936 Ford body (described by a witness as of relative “egg shell” consistency). Thus, the major damage sustained by the car was caused when it crashed into the hill, unchecked by brakes and out of control, the driver unconscious.
Further, considering that the tractor or cab of this long truck and trailer (no measurements thereof are in the record), turned and proceeded down the side-road, while the rear end of the trailer still proceeded westward, it is far from improbable that plaintiff’s brakesmark commencing at 30-36 feet from the point of impact, actually commenced just a few feet to the rear (east) of where the rear of the trailer was situated at the time the truck commenced its turn; between the driver’s reaction time and braking distance time, of course, the rear of the trailer continued westward before turning, drawn forward by the front of the truck which had turned southward into the little lane to the store.
I have digressed at this length to indicate the really serious fallacy involved in our substituting for sworn testimony, hypotheses, existing only in our own respective minds and founded on arbitrary assumptions of reaction times, braking efficiencies, braking surfaces, speeds, and distances which of necessity exclude the infinite variations which may have in fact existed.
It is therefore my belief that the finding" of the District Court was not manifestly-erroneous that the defendants’ truck pull *119 ed suddenly across plaintiff’s path, causing the accident, and that the defendants did not bear their burden of proving the affirmative defense of contributory negligence by any evidence to the effect that plaintiff was a sufficient distance to the rear of the truck to have avoided the accident if proceeding at a reasonable speed.
I might add that, as a matter of law, I do not believe a speed in excess of the legal speed limit of Port Allen to be per se negligence at the place and time of the accident. Our speed statutes provide that one who operates a vehicle in excess of the speed limits “shall be prima facie at fault”, LSA-R.S. 32:227; see also 5 Am.Jur. 647, Verbo “Automobiles”, Section 262 “Driving in Excess of Speed Limits”. But although there is a presumption that speed excessive of statutory limit is negligent, under the facts and circumstances of each case such speed may be affirmatively shown not to constitute negligence.
The facts indicate that this accident happened on the highway very near the westernmost limits of the town of Port Allen. Following the store into which defendant’s truck was turning, was open country. Thus, while technically within the town limits and subject to the speed ordinance, actually speed in excess thereof may not constitute negligence in the face of the actual circumstances in this sparsely settled area (there were three or four residences adjacent to the store). It may be no more negligent under the facts and circumstances of this case for plaintiff to have increased his speed to 45 mph to pass this slower-moving truck, than to have done so at any other place on the open highway. See Ball v. Home Oil Co., La.App. 1 Cir., 4 So.2d 579; Grasser v. Cunningham, La.App. 1 Cir., 200 So. 658; Toney v. Burris, La.App. 1 Cir., 45 So.2d 438; McDonald v. Zurich General Acc. & Liability Ins. Co., La.App., 25 So.2d 923; Murphy v. Star Checker Cab, Inc., La.App., 150 So. 79. See also Casser v. Mansfield Lumber Co., 215 La. 533, 41 So.2d 209, where under almost identical facts in open country, the forward truck driver was held to have had the last clear chance to avoid the accident since he should have noted car approaching from his rear before suddenly turning into driveway.
For the above and foregoing reasons, I respectfully dissent from the majority opinion herein.

. For instance, see table Blashfield’s Cyclopedia of Automobile Law, Section G237, Volume 90, page 412 (Perm. Edition) : where at 10 mph, a driver is supposed to take a total of 15.5! to stop (including actual stopping distance after brakes applied if brakes “in excellent condition” of 4.5', plus reaction time of “average driver” of 118); at 20 mph, of ■40' (reaction time, 22'; distance after brakes applied, 18'); at SO mph, of 73' to stop (33' reaction time, and 40' after ^brakes applied), etc. But compare ta'ble, “Lawyer’s Motor Vehicle Speed ■■‘Chart”, published by International Enterprises, Boston, Mass., where for same speeds total stopping distances are set forth as:- at 10 mph 20.8' (reaction time, 14.7'; braking distance, 6.1'); at 20 mph, 59.3' (reaction time, 29.3'; distance after brakes applied, 30'); at 30 mpbi, of 120.2' total braking distance to stop (44' reaction distance, ■ 76.2' after brakes applied). ,’
Thus at 30 mph, there is a difference in total braking distance of about 50 feet! At 60 mph, Blashfield’s shows the total braking distance as' 226 feet; the Lawyer’s-Speed Chart as 364.4 feet;- or more than 1 y% times as great a distance, 138.4 feet more distant!