102 So.2d 477

**Mrs. Euna McELVEEN, Wife of and William Harvey BELSHE,**

**v.**

**Edward GANT, Woodrow Wilson Gant, and Nola Cabs, Inc.**

No. 43455.

April 21, 1958.

Rehearing Denied May 26, 1958.

Charles E. McHale, Jr., New Orleans, for plaintiffs-relators.

Henry L. Oulliber, Jr., Robert J. Pitard, New Orleans, for defendants-respondents.

TATE, Justice ad hoc.

The present proceedings are before us on certiorari granted on application of plaintiffs to review a judgment of the Court of Appeal for the Parish or Orleans, 92 So.2d 719, which reversed the trial court's award of $4,300 to plaintiffs and dismissed their suit.

Mrs. Euna McElveen Belshe was struck by a taxicab in the City of New Orleans while she was making a pedestrian crossing of Tulane Avenue at its intersection with South Claiborne Avenue. She and her husband filed suit for the damages occasioned by her serious personal injuries thereby sustained. Made defendants were the cab driver and others civilly responsible for the negligent operation of the taxi in question.

Plaintiffs contend that Mrs. Belshe entered the intersection on a favorable traffic signal, which changed while she was walking across Tulane Avenue; that the defendant driver negligently struck her in the intersection without having made proper observation before entering therein as to pedestrian traffic stranded in mid-street by the change of traffic signal; and that, even assuming Mrs. Belshe was contributorily negligent in continuing her progress across the street after the light had changed, the motorist had the last clear chance to avoid the accident. These contentions were sustained by the trial judge who, in refusing defendants' application for a new trial after the jury verdict herein, cited Deck v. Page, La.App.Orleans, 77 So.2d 209, where in a similar situation the oncoming motorist was cast.

The Court of Appeal, however, upheld defendants' contrary contentions that the plaintiff Mrs. Belshe entered Tulane Avenue when the traffic signal was unfavorable for pedestrian entry thereupon and that the defendant cab driver did not have any reasonable chance to avoid the accident because her presence on the roadway ahead was screened by another vehicle to the driver's right. 92 So.2d 719.

We believe that plaintiffs, petitioners for the writ of review, have correctly stated:

"The main controlling issue on both trials and before the Court of Appeal at all times has been: 'Could the defendant motorist by the exercise of reasonable care and prudence have discovered the peril of the pedestrian in time to have avoided striking the victim?'"

The record indicates that at the intersection in question both Tulane and Claiborne Avenues are broad eight-laned thoroughfares with neutral grounds separating the four-lane roadways reserved for each direction's motor traffic. The accident occured at 12:15 A.M. on September 24, 1953. Immediately prior thereto, having approached on the river (or her right hand) side of Claiborne, the plaintiff Mrs. Belshe accompanied by a nephew was crossing the intersection at the corner from the uptown (or generally northerly) to the downtown side of Tulane Avenue.

Mrs. Belshe and her nephew testified that upon entering Tulane, they observed approaching thereon two vehicles about one to one and one-half blocks to their left. These westerly-bound automobiles turned out to be defendants' Chevrolet taxicab in the innermost lane adjacent to the neutral ground, slightly preceded by a Plymouth sedan in the adjacent third lane. There was no other automotive traffic in the vicinity at the time.

The determination of the trial court that the signal light was favorable to a pedestrian crossing when Mrs. Belshe and her nephew stepped into Tulane Avenue is supported by a preponderance of the evidence. Corroborative of their positive and uncontradicted sworn testimony to this effect is the uncontradicted testimony of Henrichs, driver of the Plymouth alongside defendants' taxi, that as these vehicles were slowing to a speed of 20–25 miles per hour for a red light there inhibiting the movement of Tulane Avenue motor traffic, said signal flicked from red to green when they were about 20–30 feet from the intersection in question.

Henrichs also testified that thereafter when he was about midway across the very broad Claiborne Avenue intersection he noticed Mrs. Belshe in the street on the far side of the intersection, herself at that time about midway across Tulane. He veered to his right and to the rear of this pedestrian and then saw her through his rear view mirror when she was struck.

Although the defendant driver admitted noticing immediately before the accident that Henrichs had swerved to the right, he claims he did not see Mrs. Belshe at all until he struck her, when he immediately braked his vehicle. Neither driver saw Mrs. Belshe's nephew who, a little in front of her, had just stepped onto the neutral ground when Mrs. Belshe was hit.

Mrs. Belshe, a heavy (232 pounds) lady in her late fifties, was walking in what was

at best an average gait and had before the impact crossed about three-quarters of the rather wide roadway. Henrichs, the other motorist who veered to avoid striking her after he noticed her, stated she was looking straight to her front and was obviously unaware of approaching traffic (or that the traffic signal had changed against her.)

■ Under the last clear chance doctrine as enunciated by Louisiana jurisprudence, a motorist who observes or who should by the exercise of reasonable care have observed another in a position of peril may be held responsible for injuries caused by an ensuing collision with the other despite any contributory negligence on the part of the latter if, after the duty to make such observation arose, the motorist could reasonably have avoided the accident. Cassar v. Mansfield Lbr. Co., 215 La. 533, 41 So.2d 209, Jackson v. Cook, 189 La. 860, 181 So. 195, Rottman v. Beverly, 183 La. 947, 165 So. 153; Cf., Russo v. Texas & P. Ry. Co., 189 La. 1042, 181 So. 485.

■ In Rottman v. Beverly, supra cit., for instance, a motorist who was traveling forty-five miles per hour on a straight highway applied his brakes slowly and blew his horn when he saw a pedestrian start across highway, but nevertheless hit her because she neither heard the horn nor saw his automobile. We stated that although the plaintiff was guilty of the grossest kind of negligence, her negligence did not bar recovery because the driver of the car unquestionably had the last clear chance to avert the accident by making proper use of available and adequate means, such as by stopping or slowing. We remarked there, as we have reiterated several times since, that, "the first duty of those who operate engines or motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger," 183 La. at page 955, 165 So. at page 156.

Thus, when the light suddenly turned from red to green in their favor, the present motorists were under a duty, before proceeding through the intersection, to exercise due care to discover any pedestrians already therein in reliance upon the previously red signal inhibiting motor traffic. In our opinion, even conceding most favorably to defendants (without deciding) that Mrs. Belshe was contributively negligent, had the defendant driver made such observation, he could easily have avoided hitting the pedestrian who was so apparently unaware of her danger, since he came to a stop about nine feet after he applied his brakes at the impact with this unfortunate lady.

As to the argument that the defendant driver's view of Mrs. Belshe was screened by the car to his right driven by Henrichs, while this may have been true when the vehicles got to within a few feet of Mrs. Belshe, the rather vague testimony as to

the relative position of the two automobiles does not afford any ground for reversing the trial court's refusal to excuse the driver's failure to observe, during his approach up to and across the very broad eight-lane Claiborne Avenue intersection, pedestrians who had commenced to traverse Tulane Avenue before the light had changed in favor of motor vehicle traffic thereon.

No issue is made as to quantum.

For the reasons assigned, the judgment of the Court of Appeal for the Parish of Orleans is reversed, annulled, and set aside, and it is ordered that the judgment of the district court be reinstated and affirmed. All costs of these proceedings to be paid by defendants.