McBRIDE, Judge.
On October 22, 1957, plaintiff’s husband, Philip C. Koine, an 83-year-old man, was struck and fatally injured by a taxicab driven by John Heckler, at the intersection of Tulane Avenue and South Cortez Street in New Orleans, at which intersection traffic movement is not controlled by semaphore or other signals. Plaintiff instituted this suit against Heckler and the owners of the taxicab, in solido, for a large amount of damages representing injuries to her husband, for his death, and incidental expenses, including the cost of burial. She alleges the taxicab driver was negligent in several particulars, chiefly in that he failed to have his' car under proper control or to keep a proper lookout, and in failing to observe Philip C. Koine crossing the street, and in not yielding to him his superior right of way as a pedestrian.
After a trial on the merits of the case, there was judgment in favor of the defendants dismissing plaintiff’s suit, and she has taken this appeal which is now before us-for determination.
Tulane Avenue is a wide thoroughfare bisected by a narrow neutral ground; said avenue has two roadways and accommo-. dates a two-way traffic movement, and each roadway is broad enough to permit four *178 automobiles to travel abreast thereon. At the time of the accident the cab was traveling generally north or toward Moisant Airport in the innermost traffic lane adjacent to the neutral ground. Plaintiff’s husband was attempting to make a pedestrian crossing of the roadway from the downtown sidewalk to the neutral ground.
At the time the accident occurred, about 5:IS in the afternoon, the movement of traffic on Tulane Avenue is extremely heavy and congested, and on the day and time in question such conditions prevailed. A witness described conditions as “stop and go.”
The taxicab driver had made a left turn into the outbound roadway of Tulane Avenue from Jefferson Davis Parkway, which is situated one block away from the scene of the accident, in order to go toward the airport, and as has been stated, the cab moved along in the inner lane next to the neutral ground.
There is uncontradicted testimony which emanated from the driver and his two passengers to the effect that as the cab neared the South Cortez Street intersection, all traffic came to a halt and the cab was brought to a stop behind an automobile which had stopped at a point directly at the South Cortez intersection. There were vehicles in each of the other three lanes in the outbound roadway or to the right of the taxicab, and the evidence is to the effect that these also came to a stop and some of them were within the intersection.
The pedestrian lane in which decedent walked is located on the lake side of the intersection. No one saw him enter the roadway, but a witness who was standing on the neutral ground noticed him coming across. According to this witness’ testimony, the pedestrian lane was open, stopped automobiles were on each side of it, and Koine was walking between vehicles.
Just as the decedent had succeeded in crossing about three-fourths of the roadway, the traffic started to move and all the automobiles to the taxicab’s right went into forward motion; the automobile in front of the taxicab also started forward and was followed by the cab into the intersection. As the cab reached a point about 10 or 12 feet from the lake side pedestrian lane, the driver and three witnesses saw the decedent step from in front of the automobile immediately to the right of the cab. The cab driver immediately sounded his horn and applied his brakes but to no avail, and the pedestrian walked into the side of the right front fender of the cab as it skidded past him on the wet pavement. The cab had been traveling at a speed somewhere between 12 and 20 miles per hour, and the evidence is convincing that the driver managed to bring his vehicle to a stop within a distance of 5 feet after Koine came into contact with the cab. It is shown that the car to the right was somewhat ahead of the cab and its driver swerved to the right to avoid hitting the pedestrian and that just as the swerving maneuver was made, then it was that the pedestrian came into view of the cab driver and his passengers. It is well established that the automobile to the right screened the view of the cab driver to the extent that the pedestrian could not be seen until he had walked from in front of the other car.
Considering all of the aforementioned facts, we do not see how it can be said that Heckler, the cab driver, was guilty of any negligence, for he seems to have done all possible under the circumstances to avoid striking the old man. This is certainly not a case involving the doctrine of the last clear chance or its offshoots, discovered peril or apparent peril, for the taxicab driver had no knowledge or notice of the pedestrian’s presence, nor is there any reason why it should be concluded he should have anticipated the presence of a pedestrian in the street in view of the fact all traffic was moving forward and several cars to his right and the one in front of the cab had passed across the pedestrian walk without incident. Belshe v. Gant, 235 La. 17, 102 So.2d 477, cited by plaintiff, is distinguishable and has no application because there was nothing to excuse the failure of *179 the motorist in that case from observing, during his approach up to and across a very broad intersection, pedestrians who had commenced to traverse the roadway before the light had changed in favor of motor traffic thereon.
Finding no negligence on the part of the driver of the taxicab, we affirmed the judgment appealed from.
Affirmed.