GLADNEY, Judge
(dissenting).
I respectfully dissent insofar as the majority opinion finds Obie Martin, Jr., guilty of negligence proximately causing the accident.
I am in accord with the statement of this case as formulated by the majority opinion. Accordingly, my appreciation of the issues involved herein is predicated upon the finding of facts as set forth in the lower court’s written reasons for refusing a new trial, which findings are quoted in the majority opinion. It is our prerogative, and, in fact, our duty to review most carefully the lower court’s conclusions of law deduced from its factual findings.
The majority opinion quite correctly states the presumption which our jurisprudence has uniformly attributed to motorists traveling in a lawful manner on the right-hand side of the highway. In the interest of clarity I quote that portion of § 919, Blashfield’s Cyclopedia of Auto *333 mobile Law & Practice, Vol. 2, which summarizes the extent of that presumption:
“A motorist has a right to assume that the driver of a vehicle coming from the opposite direction will obey the law, and to act upon such assumption in determining his own manner of using the road. A driver, therefore, proceeding on the right side of the traveled way, may assume that the driver of a .vehicle approaching on the same side, or on his left-hand side, will do all that a reasonably prudent person, under all the circumstances, would do to avoid a collision, which ordinarily would be to yield half the way, or to turn out in time to avoid a collision, and that such driver will not force him, in violation of the statute or ordinance, or the law of the road, to turn from the part of the road on which he is lawfully driving.
“Likewise, a motorist on the right side of the road and traveling in a lawful manner can assume that one approaching in the opposite direction will control his car in obedience to the law of the road and will not suddenly turn across his path.
“These assumptions may not be indulged in, however, after he sees or ought to see, from the situation of the cars on highway or the conduct of the approaching driver, that they are unwarranted. In other words, the duty of an automobile driver, who is on the right side of the street, to stop or take other precautions to avoid a collision zvith an approaching vehicle, only arises when by due care he discovers that another on the wrong side of the street cannot or zvill not himself turn to the right to clear his zvay. It follows that his right to assume that the other driver zvill comply with the lazvs of the road is not absolute, but may be qualified by the particular circumstances such as the other vehicle’s proximity, position and movement and the condition of the road, including the usable width.” (Emphasis supplied.)
Applying this well-recognized test to the case at bar I cannot subscribe to the conclusion reached by the court below and affirmed by the majority herein. I accept as established that Moore was attempting to pass another vehicle when the accident occurred. It necessarily follows that Martin’s first observation of the maneuver, when still some 1,000 feet distant, could in no wise serve as a cause of immediate alarm or recognition of Moore’s peril, for no peril then existed. Manifestly, Moore had ample time and space at the 1,000 feet distance to either complete his maneuver or abandon his attempt by decelerating and returning behind the preceding vehicle. Consequently, the reasoning of the lower court, which was quoted with approval by the majority herein, is, in my opinion, erroneous, inasmuch as it states:
“Assuming that he (Martin) used up nearly two seconds in attempting to bring his car to a halt, the uncontra-dicted evidence shows that he continued down the road in the face of apparent danger, taking no action to extricate himself, for a period of five seconds.” (Emphasis supplied.)
There was no apparent danger within legal intendment until such time as Martin by the exercise of due care discovered or could have discovered that Moore could not or would not himself turn to the right to clear his way. Blashfield, § 919, supra.
Accordingly, the questions for our determination, as were correctly formulated by the majority opinion, are: whether Martin indulged in his presumption after such time as he should have discovered the peril, to-wit, that Moore could not or would not return to his proper lane; and whether Martin could have avoided the collision had he timely discovered the peril. ■ Moore could have returned to his proper lane, either by completing or abandoning his maneuver, in a much shorter time, in fact, almost instantaneously, then the approxi *334 mately three seconds which it would have taken Martin to bring his car to a stop. Blashfield’s Cyclopedia of Automobile Law & Practice, Vol. 9C, § 6237 at 413; Barrett, Mechanics of Control and Lookout in Automobile Law, 14 Tulane Law Review, 493, 503 (1940). In that regard our Supreme Court, in a frequently cited discussion of the doctrine of discovered peril, stated:
“Of course, there can be no recovery against defendant if he used due care in discovering the peril and after discovering it could not avoid the accident, as in such case there would be no negligence at all on the part of the defendant.” Rottman v. Beverly, 1936, 183 La. 947, 165 So. 153, 157.
I am at a loss to understand, therefore, how Martin could have had time to avert the accident after having discovered that Moore could not return to his proper lane.
In light of the foregoing discussion I am of the opinion that any fault on Martin’s part must be predicated on a finding that he should have discovered that Moore would not return to his proper lane, and that had he made such a discovery he would have had sufficient time to avert the accident. In his regard I re-emphasize, at the risk of being repetitious, the statement in Blashfield, § 919, that:
“It follows that his right to assume that the other driver will comply with the laws of the road is not absolute, but may be qualified by the particular circumstances such as the other vehicle’s proximity, position and movement and the condition of the road, including the usable width.” (Emphasis supplied.)
The proximity, position and movement of Moore’s vehicle when originally observed by Martin were certainly commensurate with that of a normally executed passing maneuver. The 111 feet skid marks left by the Moore vehicle indicate that the driver thereof began breaking his vehicle several seconds previous to the impact. The usable width of the road was such that the only possible preventive action available to Martin was to bring his vehicle to a complete stop, which action in order to in fact be preventive, would have had to be begun more than three seconds previous to reaching the point of impact. Under the circumstances, viz., being confronted with a passing maneuver normal in its inception and observing the on-coming motorist taking preventive action, I cannot agree that Martin should have discovered that Moore wotdd not return to his proper lane. The skid marks of Moore’s vehicle measured 111 feet to the point of impact and were twice the length of those left by Martin’s car. This indicates clearly Moore applied his brakes before Martin took similar action. At the moment Moore decided to apply his brakes instead of returning to his own lane of travel, the Moore and Martin vehicles were, with due allowance for reaction time, over 250 feet apart or approximately five-sixths of a normal city block. When Moore made this unwise decision Martin had no choice except to apply his brakes.
Furthermore, with regard to the application of the doctrine of last clear chance, interchangeably designated as discovered peril, the Supreme Court has stated:
“The difference between the District Court and the Court of Appeal in testing and determining the ability of the truck driver to have avoided the accident after he started to make his turn, and at a time when he should have seen the young man on the bicycle, is a very narrow one. It involves as we have said various calculations of the rate of speed, of the time it takes to react to an emergency and the application of brakes as well as the distance in which a truck, like the one in this case, can be brought to a stop, travel-ling at a given speed. As a result of those calculations, especially those of the rate of speed of the respective vehicles which are based principally on *335 assumptions, the difference is one of seconds in the matter of time, and of a few feet only in the matter of distance; too little in our opinion to justify the application of the doctrine of last clear chance and discovered peril. ‘The doctrine of the last clear chance is one involving nice distinctions, often of a technical nature, and courts should be wary in extending its application.’ Hutcheson v. Misenheimer, 196 [169] Va. 511, 194 S.E. 665, 667.” Bergeron v. Department of Highways, 1952, 221 La. 595, 60 So.2d 4, 8; Maryland Cas. Co. v. Allstate Ins. Co., La.App. 2 Cir., 1957, 96 So.2d 340.
In Chouest v. Remont, La.App. 1 Cir., 1955, 81 So.2d 568, the doctrine of discovered peril was invoked against a motorist who failed to avoid a collision with an oncoming vehicle which had swerved into the opposite lane of travel. The case is clearly distinguishable from the instant situation inasmuch as no attempted passing maneuver was involved in Chouest. Consequently, the circumstances therein, viz., proximity, position and movement of the encroaching vehicle, were such that the properly traveling motorist should have immediately discovered that the encroaching vehicle would not return to its right lane.
Also distinguishable for the same or related reasons are the authorities cited in the Chouest case, some of which are included in the quotation appearing in the majority opinion, specifically, Rottman v. Beverly, 1935, 183 La. 947, 165 So. 153; Jackson v. Cook, 1938, 189 La. 860, 181 So. 195; Russo v. Texas & Pacific R. Co., 1938, 189 La. 1042, 181 So. 485; Prevost v. Smith, La.App. 1 Cir., 1940, 197 So. 905; Redden v. Blythe, La.App.Orleans, 1943, 12 So.2d 728; Cassar v. Mansfield Lbr. Co., 1949, 215 La. 533, 41 So.2d 209. And, after careful review of our jurisprudence relative to the doctrine of discovered peril, I consider the opinion expressed in this dissent to be thoroughly consistent therewith.
That portion of the majority opinion disposing of the issues of contributory negligence and the lower court’s refusal to grant a new trial is, in my opinion, correctly reasoned and decided.
For the foregoing reasons, I dissent from the majority opinion insofar as it holds Obie Martin, Jr., guilty of negligence proximately causing the accident herein sued upon.
Rehearing denied;
GLADNEY, J., dissents.