This is a suit for damages growing out of an automobile accident which occurred on October 2, 1946, on a highway leading south from the City of Houma in Terrebonne Parish. The plaintiff was driving his Plymouth Sedan automobile in the direction of Houma, following a school bus which was transporting school children home from school. The bus came to a stop in order to discharge some of the children and plaintiff, in accordance with the highway regulations, brought his car to a complete stop, the front being almost abreast of the center of the bus. Whilst he was thus parked, the rear end of his car was run into by a truck owned by Dowell, Inc., which was being driven at the time by one R. L. West, acting within the course and scope of his employment by that company. The impact was rather severe and plaintiff's automobile was considerably damaged. He received a strong jolt but suffered injury only to his neck. He was not struck by, nor did he strike any part of the automobile and as we understand, it was more of a jolt to his neck than anything else that caused the injury he complains of.
He brought this suit against the owner of the truck and its public liability insurance carrier, The Indemnity Insurance Company of North America, of Philadelphia, Pennsylvania, and the driver, R. L. West, predicating his demand for damages on the negligence of the driver in certain particulars specified in his petition. The demand was in the sum of $8,345, itemized as follows: $300 for damage to his automobile, $45 for doctors' bills, $3,500 for physical pain and suffering to the date of filing his suit, $2,000 for future pain and suffering and $2,500 for mental pain and anguish.
The defendant West was never cited. The defendants Dowell, Inc. and The Indemnity Insurance Company of North America filed a joint answer in which they *Page 528 
denied liability, but offered no evidence whatever in support of the defense they had made. After trial of the case, judgment was rendered in favor of the plaintiff in the sum of $1,345. Of this amount $300 was for damage to his automobile, $45 for the doctors' expenses claimed, and $1,000 divided in two separate items, $500 for the pain and suffering he endured within approximately the first month of the accident and $500 for the discomfort and inconvenience which he has felt since that time. The appeal was taken by the plaintiff who is dissatisfied with the award made for the physical pain and suffering sustained and who also complains of the judge's refusal to have allowed anything for mental pain and suffering.
Inasmuch as on the appeal, liability is conceded and the defendants have no complaint to make about the amount of the award, our task is limited to reviewing the trial judge's findings with regard to the nature and extent of plaintiff's injury and whether he should recover more than he was allowed.
There is no dispute regarding the award made for the damage done to the automobile and for the doctors' bills.
In describing the sensation he felt immediately following the impact, plaintiff states that everything went black for a second or so but he recovered from that and then got out of his car and his first statement to West was to ask him what he tried to do, "break my neck?" The accident occurred at about4:10 in the afternoon and the following day he went to work as usual. He is an engineer, employed by some oil tool and equipment company and is required to travel a good deal in his automobile. He has lost no time from his work but says that the injury to his neck is quite painful. The first day or so following the accident, when he tried to get up from his pillow in the morning he had no control over the neck muscles and had to use his hands to pull his head from off the pillow. That extreme soreness lasted about a week.
As we understand his testimony, he went to see Dr. Clark Collins the day after the accident but his testimony regarding that visit is very vague and indefinite and although he says it was an official request for medical advice, when he was asked whether he had ever been rendered a bill for services, he only imagines that he was. He states that Dr. Collins said that he had sustained a neck sprain but he does not say that he told him to do anything about it. He says the pain persisted so, that about a week after he went to consult Dr. Roy Martin. Dr. Martin gave him some diathermic treatments and recommended heat treatments and massages of some kind when he was at home. That apparently gave him some relief. He is corroborated by Dr. Martin about the treatments he gave him and recommended but it is important to note that the Doctor says that when he first examined him all he found was that he had bruised his neck and he could not find any clinical evidence of a fracture or any damage. As plaintiff continued to complain however, the doctor thought it would be safe to have some X-Rays made. This he did and on examining them he could not find anything out of line. He then recommended that plaintiff consult a specialist in New Orleans, which he did. On July 27, 1947, he was examined by Dr. Irving Cahen of that city.
On his examination, Dr. Cahen came to the conclusion that plaintiff has sustained a sprain of the neck vertebrae and mild fascitis, which he says is a reaction of the ligaments of the neck. The doctor testified that apparently the initial trauma had subsided with the treatment plaintiff had received and with his restricted activity for a period of several weeks. He observed the X-Ray findings which were negative. He says that chronic complaint of a mild nature may be associated with a cervical myofascitis which, apparently, has subsided. Prolonged complaints are not considered to be unusual in cases of this kind and the discomfort is treated by the use of diathermic massage and restricted cervical activity. In certain cases the doctor says the use of a cervical collar is recommended for the purpose of immobilization, but in this case there was nothing to indicate the necessity for such support. Plaintiff had told the doctor of a cracking sensation in his neck and he was satisfied that there was, but apparently did not seem to attach any great importance *Page 529 
to that and said that in his opinion it resulted from the association of muscles passing over normal bony prominences and is not considered to be a disability. This doctor seemed to be unable, or he would rather not express any definite idea as to how long the discomfort plaintiff complains of would persist. It might take a long time, he said, or a short time, depending upon the nature of the sprain and the possible response to treatment or with no treatment for it to wear off.
The defendants had the plaintiff examined by Dr. George C. Battalora, who, like Dr. Cahen, is a recognized orthopedic surgeon. Dr. Battalora examined him on May 24, 1948. He could find nothing objective and stated that all neck motion was normal. The doctor examined some X-Rays which he had had made by a radiologist but could find nothing wrong with the plaintiff at the time they were taken. In view of the fact that there was a possible nerve involvement, he referred him again to the radiologist for additional pictures. These last X-Rays were taken with the neck joint forward and also with the neck joint backwards. He states that in certain instances they notice a disturbance of the discs in the neck in this type of examination but in this case, there was none. When asked to state in lay language what plaintiff's complaint was and what his diagnosis was, the doctor stated: "My impression of it was he was complaining mainly of some soreness and stiffness in his neck and the injury was a sprain of the cervical region of the body." He could see no cause for alarm on the part of the plaintiff and did not think the injury was a serious one. This doctor testified that he could not feel that cracking sensation that has been mentioned before. He thought that plaintiff was honest and sincere in the statements he made but did not claim to be a psychiatrist and therefore the condition of neurosis which may have been present, could not be dispensed with.
In so far as we have to decide the condition resulting from plaintiff's injury according to the medical testimony therefore, we would say that he suffered nothing much more than a sprain of the muscles of his neck with a possible nerve involvement. That may cause him some discomfort and no doubt it does, if we accept his statements. Otherwise, there are absolutely no objective symptoms to indicate why he should be suffering and have the discomforts he complains of. He has not lost a day's work as a result of his injury and whilst he is to be commended for continuing on his job even though suffering some discomfort, that does not give him a claim for any large damages for physical and mental pain and suffering such as he now demands.
It is said on his behalf that he was an athlete while he was a student at Louisiana State University and that afterwards he indulged in sports requiring a lot of physical activity, such as hunting and fishing. He does not seem to have had to forgo those pleasures however and the only complaint in that regard is that he endures some discomfort which he did not before while participating in them. That slight indisposition neither, in our opinion, gives rise to recovery of large damages for physical and mental pain and suffering.
We believe that the trial judge has properly analyzed his case when he concluded that plaintiff has no reason to entertain any anxiety over his condition and therefore is not entitled to any damage for mental suffering. As he stated, with regard to the physical pain and suffering, it is extremely difficult to gauge these and whilst we doubt that it was necessary for him to divide the amount he allowed as he did, it strikes us that the total of $1,000 which he awarded is fair and reasonable and we are not inclined to disturb it.
Substantial justice has been rendered between the parties by the judgment appealed from and it therefore stands affirmed. *Page 530