83 So.2d 676 (1955)
Rita Belle ATTAYA
v.
Clarence D. ZIMMERLE, Jr., et al.
No. 4099.
Court of Appeal of Louisiana, First Circuit.
November 22, 1955.
Huckabay, Seale, Kelton & Hayes, Baton Rouge, for appellant.
White & May, Baton Rouge, for appellees.
LOTTINGER, Judge.
Petitioner sues for personal and property damages sustained from an automobile accident, the defendants being Clarence D. Zimmerle, Jr., the driver of one of the vehicles, and his liability insurer, the American Automobile Insurance Company. Trial below was before a jury, and the jury awarded judgment for petitioner in the sum of $7,500. The defendant has appealed.
The facts show that on March 5, 1954, the petitioner and defendant, Zimmerle, were involved in an automobile accident in the City of Baton Rouge. Petitioner was stopped for a red light when her vehicle was struck in the rear by a vehicle driven by said defendant. The sudden and unexpected impact from the rear caused injury to petitioner's neck which is commonly known as a whip-lash injury. Petitioner sues for property damage to her automobile in the sum of $52.01; medical and doctor bills of $105; and damages for personal injuries in the sum of $25,000.
The trial was held before a jury on June 30, 1955. The jury awarded judgment in favor of petitioner in the sum of $7,500. The defendant appealed seeking a reduction in the award to petitioner. Petitioner filed an answer seeking an increase in the award.
The question of the liability insurance policy in the amount of $10,000, and the question of liability of the defendants for the damages to petitioner have not been seriously contested throughout the trial and appeal of this case. The only question in dispute is as to quantum.
Three doctors treated the petitioner for the injuries sustained by her in the accident. She first saw Dr. Gaudin who was petitioner's family physician. He treated her from March 6, 1954, the day after the *677 accident, until April 22, 1954. Dr. Gaudin testified that his examination showed that petitioner had received a strain of the neck muscles as a result of the accident. His X-rays showed no injuries to the bone. Petitioner complained of pain in the neck, headaches, and there was limitation of movement of the head.
On April 24, 1954, petitioner saw Dr. Bannerman, an orthopedic surgeon, who treated her from said date until July 6, 1954. He stated that petitioner had received a whip-lash injury, and that she complained of tenderness, particularly on the right side of her neck in the musculature. There was no tenderness over the neck bones. On her visit of April 24, 1954, the strength appeared to be good, and motion was almost normal. Two days before trial Dr. Bannerman again examined petitioner. At that time she stated that on some days and weeks she was not bothered very much, but that sometimes when she remained in the same position for some length of time, her neck began to pain her and it became necessary for her to take aspirin for relief. Dr. Bannerman stated that, two days prior to trial, the strength to petitioner's neck was unimpaired, however there was slight restriction of motion. He testified that her case was mild to moderate, that there was no permanent injury and no evidence of nerve pressure. He stated that this type of injury usually cleared up within a few months and for them to last a year or a year and a half is not at all unusual but that petitioner's injury was more prolonged than one would ordinarily expect.
Dr. Forman, a neurological surgeon, did not treat the plaintiff but examined her on March 21, 1955 and again on June 21, 1955. He stated that on this first examination plaintiff had tenderness to pressure over the left side of the back of her neck and along the base of her skull on the left side and down over the muscles at the top of the left shoulder extending into the neck. She had a slight limitation of movement of the neck in certain directions. Flexion, bending her neck forward was most limited at that time. Moderate limitation of lateral tilting of her neck and of rotation of her head, any of these movements in the extreme ranges caused her discomfort down in the back of her neck on the left side. On his second examination his findings were essentially the same as the first and he found nothing in his examination that was inconsistent with her subjective complaints. He found no evidence of damage to nerves or nerve roots. He stated that, about a week before trial, petitioner's headaches were less frequent and less severe. He testified that petitioner had received a moderately severe whip-lash injury.
The doctors testified that in severe cases, the patient would wear a neck collar. However, none of the doctors who treated petitioner were of the opinion that her case was of such a severe nature. She was given traction, which was mostly applied by herself at home, and a rubbing compound, or salve. She was told to take aspirin for the relief of discomfort, and at the doctor's offices she was sometimes given Salimeth-C, which is a little stronger than aspirin, but is not such a sedative as is given in cases of severe pain.
The evidence shows that Miss Attaya is a Research Associate with the State Department of Education. Her work is with the free school lunch program, and she is the only person in her particular position. Her job requires her to make frequent trips around the state during which she does her own driving. She testified that, after driving for about two hours, it is necessary for her to stop and take aspirin for the relief of pain which develops in her neck, and for headache. She claims that, whenever she sits in the same position for a couple of hours, a headache develops which requires aspirin for relief. The doctors stated that taking of long trips would cause such headaches, particularly considering her injuries. Petitioner claims that, since the injury, she takes about 30 aspirins a week, whereas, before the accident, she very seldom took any.
All of the doctors were called by the plaintiff and stated that there was no permanent injury, and that her neck would *678 clear up in due time. They all stated that her injuries were not considered severe, but that her injury was prolonged more than is usual.
The evidence indicates to us that petitioner did receive a slight to moderate severe strain of the neck muscles and ligaments, which has caused her some extended discomfort. Shortly before trial, petitioner told her own doctor that her discomfort was less frequent and less painful, indicating that her injury was healing. Although the doctors did testify that her injury was more prolonged than usual, the evidence indicates that this is possibly a result of the frequent taking of long trips, which are required by the nature of her job. You might say that petitioner is her own boss, and, because of the peculiar nature of her job, she has suffered no monetary loss because of loss of time.
Considering the evidence as a whole, the nature of petitioner's injuries, and particularly the testimony of her own doctors, it appears that the award given below is excessive. In Hogg v. Department of Highways, La.App., 80 So.2d 182, petitioner was awarded $4,233.90 for injuries consisting of a fractured cervical vertebra, concussion, injuries to knee, and slight impairment of motion in the neck with some discomfort. The injuries in that case appear to be of more serious nature than those presently before us. In the recent case of Benoit v. Commercial Casualty Ins. Co., 79 So.2d 647, this Court decided that an award of $2,000 was considered adequate for injuries to a woman for pain, suffering and discomfort as a result of an injury to her neck and spine. We do not think however that the discomfort was as prolonged in that case as in the instant case. Furthermore in the Benoit case the Lower Court found that the complaints of plaintiff as of the time of trial were exaggerated which is not suggested here. In Edmonson v. West, 40 So. 2d 527, this Court awarded damages of $1,000 for a neck strain resulting from an accident similar to the one presently before us. The injuries sustained by petitioner in the Edmondson case are strikingly similar to the injuries sustained by Miss Attaya. We now feel that the amount awarded in the Edmonson case was too small taking into consideration the value of the American dollar, the seriousness of a whip-lash injury and the duration of the pain and discomfort as a result thereof.
The petitioner has shown damages in the amounts of $52.01 as property damages to her automobile, and $105 as medical expenses. We feel that the sum of $2,500 should be a reasonable compensation for personal injuries sustained by the petitioner, and the amount awarded below will be reduced accordingly.
For the reasons assigned, the judgment below is amended so as to reduce the amount thereof to the sum of $2,657.01, and, as amended, the judgment below is affirmed. All costs of this appeal are to be paid by petitioner.
Judgment amended and as amended affirmed.