116 So.2d 712 (1959)
Crawford H. DOWNS, Plaintiff-Appellant,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant-Appellant.
No. 9092.
Court of Appeal of Louisiana, Second Circuit.
December 22, 1959.
Donald M. Garrett, Alexandria, for plaintiff.
Gist, Murchison & Gist, Alexandria, for defendant.
GLADNEY, Judge.
The plaintiff, Crawford H. Downs, and the defendant, Hartford Accident and Indemnity Company have appealed from a judgment awarding damages for personal injuries in favor of plaintiff. Prior to trial in the lower court defendant admitted to liability for negligence, and thus the only issue presented for consideration related to the nature and extent of plaintiff's personal injuries and the quantum which should be awarded. Our examination of the record further reveals there is no serious conflict in the evidence as to the nature and extent of the injuries to plaintiff, and accordingly the principal, if not the only question to be resolved is the amount of the award to which plaintiff is entitled. In their appeals both parties litigant contend the judgment is manifestly erroneous, the plaintiff asserting the award is inadequate, and the defendant that it is excessive.
After thorough and careful study of the record and the arguments of counsel, we are of the opinion the ruling of the trial court, as supported by the judge's written reasons therefor, properly resolves all issues presented, and the award does substantial justice to the parties, being neither inadequate nor excessive. In so approving the decision of our learned brother of the *713 district court, we adopt in lieu of our own, his reasons for judgment:
"This is a tort action arising out of an accident which occurred on July 6, 1958. At the time of the collision the plaintiff, Crawford H. Downs, was a passenger on the front seat of an automobile owned and being driven by Neal J. Dore. The Dore vehicle was stopped for a traffic light in Lecompte, Louisiana, and was struck from the rear by a vehicle owned and operated by one William O. Lorch, the assured of the defendant, Hartford Accident & Indemnity Company. At the outset of the trial the defendant admitted liability and the only issue for determination by the Court is the nature and extent of plaintiff's personal injuries and the quantum which should be awarded.
"The plaintiff is an attorney in the City of Alexandria and a member of the State Senate. He was on his way to Baton Rouge to attend a session of the legislature when the accident occurred. The plaintiff testified that as they were waiting for the traffic light to change their vehicle was violently rammed from the rear by the automobile being driven by William O. Lorch. The plaintiff, who was sitting in the front seat next to the driver, had no prior warning of the impending collision and was thrown forward in his seat causing his head to snap back. Plaintiff testified that at the time of the accident and immediately thereafter he felt no pain but that, prior to reaching Baton Rouge, he developed a severe headache. They continued on to Baton Rouge and plaintiff testified that on arising the next day in his hotel room in Baton Rouge his neck was very sore and tender and he had a severe headache. Plaintiff testified that although these headaches persisted he attended the sessions of the legislature for the next two weeks, and did not go to see a doctor until July 31, 1958, which was 25 days after the accident. At that time the plaintiff went to see Dr. Paul M. Davis, an orthopedic specialist of Alexandria, Louisiana, who diagnosed the injury as a moderately severe compression type injury to the soft tissue in the musculature of the cervical spine as a result of a sudden extension of the neck forward resulting in a compression of the area when the head popped back. It was Dr. Davis' opinion that this caused a bruising and contusion of the muscles and tissues in the area of the cervical spine resulting in what is commonly called a whip-lash injury. The treatment prescribed by Dr. Davis was rest, refraining from driving an automobile and if the pain became too severe to take physical therapy treatments and if necessary to wear a collar type brace to suspend the head and remove pressure.
"The plaintiff did not ever wear a collar but he did during the month of August 1958 take three physical therapy treatments which consisted of the application of heat and plaintiff testified that this did relieve the pain temporarily. The plaintiff did not return to Dr. Davis until March 19, 1959. Dr. Davis testified that at the time of this examination he found the plaintiff still complaining of pain and that he had at least one positive objective symptom, that is, limited motion of the neck to one side, which indicated a muscular spasm. It was the opinion of Dr. Davis that on this occasion, on March 19, 1959, the plaintiff was still suffering from pain, but Dr. Davis stated that plaintiff should completely recover within four to six months. Dr. Davis testified that on the day of this second examination the plaintiff had made substantial improvement but that he would continue to have intermittent pain for the remainder of the four to six months period.
"On October 24, 1958 the plaintiff was examined by Dr. Ray E. King of Shreveport, Louisiana, whose diagnosis *714 and conclusions are stated by him in his deposition:
"`I concluded, that based on the patient's symptoms, I believe he received a sprain involving the ligaments and soft tissues in the posterior cervical region of his spine, which was due to the automobile accident of July 8, 1958.
"`His symptoms and findings at this time are minimal and are not disabling. There are no physical findings suggestive of an injury to an intervertebral disc in the cervical region, and X-rays of cervical spine showed no evidence of recent bony trauma. I would not expect this patient to have any permanent residual as a result of the injury he has received. I believe this patient would become asymptomatic with a few treatments of intermittent cervical traction.'
"On this same date October 24, 1958, the plaintiff was also examined by Dr. Heinz K. Faludi in Shreveport, and this medical expert's conclusions stated in his deposition are as follows:
"`I felt by the description of the patient's injury as was given to me, that one would have to assume he suffered a whip-lash type of injury to the head and neck.
"`At the time of my examination I felt that this patient gave evidence of a sprain involving the cervical musculature mostly on the right side. There was no evidence of nerve involvement, and I could not find evidence of a herniated cervical disc. I felt that this patient should receive further treatment and I hoped that he would favorably respond to it. I recommended that the patient apply a hydrocollator, which is a device applying steam locally, and I recommended this patient take anti-spasmodic medication. It was my feeling this patient should improve from this treatment and I hoped he would become symptom free in an estimated period of six to eight weeks. I did not anticipate any further residuals.'
"All of the expert medical evidence is to the effect that the plaintiff did sustain a moderately severe whip-lash injury. Plaintiff was never hospitalized, nor was he placed in traction nor did he wear a collar brace, but he did suffer considerable pain and discomfort for a period of approximately nine months up through the day of trial and according to the testimony of Dr. Davis he will continue to have discomfort for from four to six months longer. The plaintiff did not actually lose any time from his normal work activities, but he was considerably discomforted and inconvenienced by the headaches and the pain in his neck and shoulders. According to the testimony of the plaintiff and the doctors this is an aggravating type of pain to endure over so long a period of time.
"This brings us to a consideration of the damages to be awarded for plaintiff's personal injuries. There are several recent cases from our Courts of Appeal involving whip-lash injuries very similar in severity to the one in this case. This Court feels that it is bound to follow and use as a guide the awards made in these cases.
"The case which is probably the most similar to the present case is Attaya v. Zimmerle, 83 So.2d 676 (La. Appeal First Circuit, 1955) in which the Court awarded $2,500 where the plaintiff sustained a whip-lash injury on March 5, 1954, and was still having some slight difficulty at the time of trial on June 30, 1955. The plaintiff in that case was not hospitalized, nor did she wear a collar brace, nor did she lose any time from work and the Court held as follows:
"`The evidence indicates to us that petitioner did receive a slight to moderate *715 severe strain of the neck muscles and ligaments, which has caused her some extended discomfort. Shortly before trial, petitioner told her own doctor that her discomfort was less frequent and less painful, indicating that her injury was healing. Although the doctors did testify that her injury was more prolonged than usual, the evidence indicates that this is possibly a result of the frequent taking of long trips, which are required by the nature of her job. You might say that petitioner is her own boss, and, because of the peculiar nature of her job, she has suffered no monetary loss because of time.'
"The plaintiff has also cited the case of Lampkin v. United States Fidelity & Guaranty Co., 99 So.2d 147 (La. Appeal Second Circuit, 1957) in which the Court held as follows:
"`Plaintiff, a 37 year old colored woman, sustained a whiplash injury of the cervical spine, described by her medical expert as "moderately severe". Plaintiff was confined for some ten days, more or less, in the hospital; was treated by traction for a considerable period of time, and was required to wear a neck brace. The district judge reached the conclusion that plaintiff's disability would endure for a total period of approximately nine months, and, on the basis of this finding, he awarded the sum of $2,500 for pain and suffering; $487.50 for loss of wages, it having been established that plaintiff was gainfully employed at a weekly wage of $14.50 and $340.42 for medical and hospital expenses. We find nothing in the record which would indicate error in this award, either as being inadequate or excessive.'
"In the recent case of Simmons v. Pierce, 104 So.2d 258 (La. Appeal First Circuit, 1958) the Court awarded $3,000 to the plaintiff who was hospitalized for six days during which time he was placed in traction and also wore a neck brace and then on release from the hospital suffered pain and discomfort for a period of 18 months. The Court held as follows:
"`There is no medical testimony that the plaintiff was a malingerer other than a suggestion that a previous or prior tendency to neurosis might have been enhanced or aggravated as a result of the accident and injuries. We are convinced from all the medical testimony of the doctors who examined plaintiff immediately after and subsequent to the accident, with the exception of Dr. Edelman, who examined him one time 18 months after the accident, that plaintiff Jack Simmons suffered what might be termed a moderately severe whiplash injury, similar but somewhat more severe than that received by the plaintiff in the cases of Attaya v. Zimmerle, La.App., 83 So.2d 676; Lampkin v. United States Fidelity & Guaranty Company, La. App., 99 So.2d 147. In both these cases, the plaintiff was awarded $2,500. We believe that an award of $3,000 would be proper in the present case.'
"In the very recent case of Watts v. Delta Fire & Casualty Company, 106 So.2d 752 (La. Appeal First Circuit, 1958) the Court awarded $3,500 to a woman who sustained whiplash injuries that required no hospitalization or loss of time from work but which did require the use of traction for almost two months with the occasional use of traction thereafter and whose total period of pain and discomfort was found to be approximately 18 months. The Court held as follows:
"`In urging us to increase the judgment in favor of Mrs. Watts, counsel seem to rely principally on the awards granted in Bartholomaus v. H. G. Hill Stores, Inc., La.App., 97 So.2d 82 ($6,000) and Baker v. United States *716 Fire Insurance Co., La.App., 89 So.2d 405 ($5,600) whereas counsel for defendants, on the other hand, urge us to grant an amount less than that given in Attaya v. Zimmerle, La.App., 83 So. 2d 676 ($2,500) and Simmons v. Pierce, La.App., 104 So.2d 258 ($3,000). Naturally, the facts in this case are not identical to those in any of the cited cases and our appreciation of the record in this case is that Mrs. Watts' injuries, while more serious than those suffered by Miss Attaya and Mr. Simmons in the Attaya and Simmons cases, they were less severe than those undergone by Mrs. Bartholomaus or Mr. Baker in the Bartholomaus and Baker cases, and hence, that an appropriate award would lie somewhere between the two extremes. We furthermore believe that the award of $3,500 is neither excessive nor inadequate and that it does substantial justice between the parties.'
"Using the above cases as a guide, it appears that plaintiff's injuries are certainly as severe as those in the case of Attaya v. Zimmerle and Lampkin v. United States Fidelity & Guaranty Company but are not as severe as those in the case of Watts v. Delta Fire & Casualty Company. I am of the opinion that an award of $3,000 for plaintiff's pain, suffering and personal injuries, is neither excessive nor inadequate, and that it does substantial justice between the parties.
"The defendant has cited the case of Moses v. Southern Production Company, 101 So.2d 485 (La. App. First Circuit, 1958) in which the Court awarded $1,500 to a man who was hospitalized for 13 days but the evidence showed that he left the hospital frequently to attend to his business and other affairs. As far as the record of this case shows there is no evidence of any pain or discomfort after the plaintiff left the hospital and apparently if there was actually a whiplash injury the Court found that it did not result in a long period of pain and discomfort, as in the case at bar.
"The defendant has also cited the case of Williamson v. Roberts, 103 So. 2d 499 (La. App. Second Circuit, 1958) in which the Court awarded $1,500 for a whiplash injury and lacerations about the head and face. In this case the plaintiff lost 16 weeks from work and had a total hospital bill of $612, but here again there is no mention in the Court's opinion of any prolonged pain and discomfort.
"Another item of damages claimed by the plaintiff is for the medical bill of Dr. Davis in the sum of $55 and the physical therapy by Wilbur E. Hunt in the sum of $15 which were proven to have been incurred by the plaintiff for treatment of his injuries and is allowed by the Court. The plaintiff has also claimed, but the defendant contests, the sum of $55 which was charged by Dr. Faludi. As is shown by the deposition of Dr. Faludi, plaintiff was referred to him by Dr. Davis who thought it advisable to get a neuro-surgeon's opinion. This medical expense was therefore part of plaintiff's costs for diagnosis and treatment and is recoverable.
"The plaintiff has also claimed loss of earnings but he admits quite freely that he cannot prove with certainty any actual losses and there is no way in which it can be satisfactorily determined how many clients he lost, what fees he missed or the ultimate effect of his failure to make automobile trips. It is too well settled to require the citation of authority that loss of wages must be proved with certainty and therefore no damages can be awarded in this regard.
"For the reasons hereinabove set forth it is the opinion of the Court that there should be judgment herein in *717 favor of the plaintiff and against the defendant for the sum of $3,125 together with legal interest thereon from date of judicial demand until paid. Counsel for the plaintiff may submit to the Court for signature a formal judgment in consonance with this opinion after the legal delays have expired."
Accordingly, the judgment from which appealed will be affirmed, the costs of this appeal to be equally divided between plaintiff and defendant.