LANDRY, Judge.
This appeal is by defendants, Lottie H. Sims and her liability insurer, New York Fire and Marine Underwriters, Inc., from a judgment rendered against them for personal injuries, incidental medical expense and property damages, in favor of plaintiffs, Roy Simms and Earline Morgan Simms, resultant from an intersectional automobile collision in the City of Baton *451 Rouge. Petitioners have not answered defendants’ appeal.
Involved in the accident were vehicles driven by petitioner, Earline Morgan Simms, and defendant, Lottie H. Sims, sometimes referred to hereinafter as “plaintiff” and “defendant”, respectively, to avoid possible confusion due to the similarity of their individual surnames.
Appellants readily concede the negligence of defendant driver but resist plaintiffs’ recovery on the ground of contributory negligence. Alternatively, defendants maintain the award of $1,000.00 to plaintiff, Earline Morgan Simms, for personal injuries is excessive and should be reduced.
The accident in question occurred at approximately 8:00 A.M., March 6, 1964, at the intersection of East Washington and Braddock Streets, which junction is attended by rather unusual physical characteristics as will hereinafter appear. The events and circumstances culminating in the mishap are not in dispute — only the legal conclusions to be drawn from them are in contention herein.
Plaintiff was proceeding eastward on East Washington Street while defendant was driving south on Braddock Street. The junction of the two thoroughfares forms what is commonly referred to as a “T intersection” with East Washington Street being the through roadway and enjoying superiority over Braddock Street, which latter avenue of travel converges from the north with and ends at the former. Southbound traffic entering East Washington from Braddock is controlled by a stop sign requiring all motorists to yield the right of way to vehicles proceeding either easterly or westerly on East Washington Street. A schematic drawing of the scene, introduced in evidence as the joint offering of both plaintiffs and defendants, shows Braddock Street to be 24 feet in width and indicates the width of East Washington Street to be 39 feet. A neutral ground of unspecified width occupies the center of East Washington Street commencing a few feet east of the intersection and from thence extends easterly a distance of 88 feet. At the eastern end of the aforesaid neutral ground is a traffic signal controlling the vehicular movement at the intersection of East Washington Street with an expressway entrance to the north of East Washington Street and Kentucky Street to the south thereof. An undetermined distance west of the intersection of Braddock and East Washington Streets is situated another “T intersection”, formed by the confluence of East Washington Street and Georgia Street which latter avenue of travel extends southerly from the former. While the record does not establish the precise distance between the west parallel of Braddock Street to the north of East Washington and the east parallel of Georgia Street to the south, the aforementioned sketch indicates an offset or dog-leg so slight that for all practical purposes these streets may be regarded as extensions of a single roadway. West of Braddock Street, East Washington appears as a normal width two lane street with no neutral ground. Easterly from the west parallel of Braddock Street, East Washington appears to be four lanes in width.
According to the investigating officer the point of collision was 57 feet east of the east parallel of Georgia Street, 10 feet north of the south curb of East Washington Street, and 30 feet south of the north curb of East Washington Street. (The foregoing distances appear to establish that East Washington Street is 40 feet wide rather than 39 feet as indicated on the hereinbefore mentioned sketch.) Inasmuch as the distance from Georgia Street to the west parallel of Braddock Street is not shown, the distance from the point of impact to the east parallel of Braddock Street as well as to the west end of the neutral ground cannot be ascertained with certainty. It appears, however, from the sketch in evidence, the collision occurred a few feet east of the east parallel of Braddock Street near the west end of the neutral ground.
*452 Defendant, proceeding south on Braddock Street and desiring to turn left to proceed easterly on East Washington, stopped at the stop sign when the traffic signal to her left at the intersection of East Washington and Kentucky was favorable for movement of traffic on East Washington Street. When the signal indicated a stop for traffic upon East Washington Street, defendant proceeded at an angle toward her left across the westbound lanes of travel on East Washington, the right front of her automobile striking the left side of plaintiff’s vehicle on its door and rear panel as plaintiff’s automobile was traveling in the eastbound lane at a speed between 10 and 20 miles per hour. Defendant stated that when she observed the signal turn red indicating a stop for traffic upon East Washington, she construed this as a signal for her to enter the favored street. She further stated that she looked to her right before entering the intersection but did not see any eastbound vehicles. She concedes she did not observe plaintiff’s vehicle until just before the impact.
In substance plaintiff testified she had stopped for a traffic light on Washington one block west of Braddock Street, and when the light changed resumed her easterly progress in a line of traffic. Plaintiff further stated she was intent upon observing proceeding traffic when, just prior to the collision, she noted defendant’s automobile approaching from the left, and the collision occurred immediately thereafter. According to plaintiff, at the time of the accident the light ahead at the intersection of Kentucky Street was green and “all the other cars were moving and so was I.” She maintained her speed was between 10 and 20 miles per hour.
Esteemed counsel for appellant argues plaintiff was contributorily negligent “in failing to keep a proper lookout; in failing to see what she could have and should have seen; and in failing to bring her vehicle to a stop which would have avoided this collision entirely.” In support of his contention learned counsel for appellant cites Deshotels v. Southern Farm Bureau Cas. Ins. Co., 245 La. 23, 156 So.2d 465 and McCandless v. Southern Bell Telephone & Tel. Co., 239 La. 983, 120 So.2d 501, which hold a motorist is not absolved from liability because of his failure to see what he could have seen by the exercise of due diligence, and that a motorist’s duty to look ahead and observe never ceases. Also relied upon by illustrious counsel is the following rule as stated in Belshe v. Gant, 235 La. 17, 102 So.2d 477:
“Under the last clear chance doctrine as enunciated by Louisiana jurisprudence, a motorist who observes or who should by the exercise of reasonable care have observed another in a position of peril may be held responsible for injuries caused by an ensuing collision with the other despite any contributory negligence on the part of the latter if, after the duty to make such observation arose, the motorist could reasonably have avoided the accident. Cassar v. Mansfield Lbr. Co., 215 La. 533, 41 So.2d 209, Jackson v. Cook, 189 La. 860, 181 So. 195, Rottman v. Beverly, 183 La. 947, 165 So. 153; Cf., Russo v. Texas & P. Ry. Co., 189 La. 1042, 181 So. 485.”
Appellant’s precise contention is that plaintiff should have observed defendant’s vehicle in the act of crossing the two westbound lanes of East Washington Street and that had plaintiff looked and seen defendant, plaintiff could have stopped her vehicle in time to avoid the accident.
In this regard, plaintiff’s testimony is that although there was nothing to obstruct her view of the Braddock Street intersection, she had no reason to be looking in that direction and that she was in fact engaged in observing traffic ahead. Assuming, arguendo, plaintiff was obliged to look out for traffic entering the intersection from the inferior street, said duty did not arise until such time as it should have *453 been apparent defendant did not intend to honor plaintiffs right of way. Plaintiff had the right to assume motorists upon the subordinate thoroughfare would cede preference to vehicles proceeding on East Washington Street. Had plaintiff looked and seen defendant stopped in obedience to the traffic sign, plaintiff had a perfect right to expect defendant would remain in such position of safety and permit plaintiff to proceed without interference. The record does not show at what point in defendant’s progress into East Washington Street plaintiff should have realized defendant intended to enter the eastbound traffic lane without stopping. According to defendant’s own testimony, there was no traffic in the westbound lanes because the signal light to her left at the intersection of Kentucky Street indicated a stop for motorists proceeding upon East Washington Street which said circumstance prompted defendant to assume such signal entitled her to proceed onto East Washington Street. Had plaintiff observed defendant proceed forward after stopping, plaintiff could have assumed defendant would stop in the vacant westbound lanes and await a safe opportunity to merge into the lane of eastbound motorists. If the foregoing were true, the point at which plaintiff should have realized defendant would not yield the right of way would not have been the north edge of East Washington Street unless, of course, defendant approached the intersection at such speed her intention not to stop could be reasonably anticipated. On this latter issue, we have defendant’s positive testimony she stopped and, after waiting, slowly proceeded into the intersection. The contention plaintiff could have stopped is dependent upon conclusions involving considerable speculation with regard to pertinent circumstances not established in the record. For example, defendant’s speed after stopping at the stop sign is not shown in the record, neither is the interval which elapsed from the time defendant proceeded forward until the moment of impact. Predicated upon plaintiff’s testimony she was traveling at between 10 and 20 miles per hour, her stopping distance ranged from 15.5 feet to 69 feet. (See Blashfield, Encyclopedia of Automobile Law and Practice, Section 6237, p. 413, and Am.Jur. Desk Book, Doc. No. 173.) Considering the numerous uncertain elements regarding time, distance and the point at which danger could or should have been observed, we are unable to conclude plaintiff could have avoided the accident by observing defendant in time to prevent a collision. It is elementary law that the party pleading contributory negligence bears the burden of establishing facts which support the plea. Fant v. Zurich Ins. Co., La.App., 160 So.2d 443; Wright v. State Farm Mut Auto. Ins. Co., La.App., 57 So.2d 767.
Pertinent to and decisive of the issue presently under consideration is the following rule set forth in Henderson v. Central Mutual Insurance Co., 238 La. 250, 115 So.2d 339:
“This court in the case of Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849, in resolving the respective duties and rights of motorists when approaching and entering intersections, very aptly stated that ‘the law in this state is well settled that a motorist who is proceeding on a right-of-way street, upon approaching an intersection where traffic is required under a city ordinance, and is warned by stop signs, to come to a complete stop before entering the intersection, should not be held to the same degree of care and vigilance as if no ordinance existed or stop signs were erected. The danger at such an intersection is less than that at a corner where no stop signs have been erected, and therefore less care is required of the driver on a favored street. The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, *454 that the other car has not observed, or is not going to observe, the law.’ 213 La. at pages 909-910, 35 So.2d at page 851.”
Considering appellant’s alternative contention the award of $1,000.00 to plaintiff should be reduced, the record shows that following the accident plaintiff was taken to a hospital by ambulance. Examination in the emergency room by Dr. Jack Rathbone disclosed some loss of cervical lordosis which is an indication of muscle spasm. Dr. Rathbone also noted some chest bruises. He diagnosed plaintiff’s condition as a “minor whiplash type injury.” Plaintiff received no further medical attention until one month following the accident at which time she consulted Dr. Louis James complaining of pain in her neck, shoulder and the back of her head. Dr. James diagnosed plaintiff’s condition as cervical muscular sprain. He prescribed relaxants and heat and recommended plaintiff’s return to Dr. Rathbone for further treatment. Two days following her visit to Dr. James, plaintiff returned to Dr. Rathbone who found her somewhat nervous. Dr. Rathbone prescribed muscle relaxants and recommended continued heat applications. On April 30, 1964, approximately eight weeks following the accident, Dr. Rathbone saw plaintiff for the last time. He found her to be much better as far as the neck soreness and stiffness were concerned.
Plaintiff, a school teacher, testified she missed one day at school. Between her infrequent visits for medical attention she suffered considerably with neck, shoulder and head pains. She attempted to alleviate her discomfort by taking the prescribed relaxants and using nightly heat applications on her neck and shoulders. Notwithstanding such therapy, her neck and shoulders persisted as a constant source of misery. Plaintiff also stated that it hurt her to raise her arms (such as writing on a blackboard) and that she ached when sitting down (such as when writing at a desk). Such activities, according to plaintiff, caused a “drawing” or “pulling” sensation in the back of her neck resulting in pain producing headaches and nervousness. Plaintiff further testified that notwithstanding the medicine and heat treatments, her condition worsened after the accident for approximately one month and then commenced to improve. She acknowledged she was somewhat better upon the occasion of her last visit to Dr. Rathbone on April 30, 1964, but that on the day of the trial, almost one year after the accident, she still experienced pain in her arms.
The testimony of plaintiff’s husband, Roy Simms, in general corroborates plaintiff’s testimony. In essence he stated plaintiff nightly complained of pain and applied heat treatment to her neck and shoulder for approximately six or seven weeks following the accident.
In the assessment of damages much discretion is left to the judge or jury. LSA-C.C. Art. 1934. In reviewing an assessment of damages the sole question is whether the lower court has abused its discretion in making the award. In determining whether there has been such an abuse, the appellate court may consider awards made in similar cases. Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64.
Our attention has been directed to several cases referred to in the briefs of both plaintiffs and defendants. Tuger v. Audubon Insurance Company, La.App., 152 So. 2d 354, relied upon by appellants, appears inapplicable in that it concerned reduction of an award from $1,000.00 to $500.00 upon the finding plaintiff failed to establish an alleged neck injury, consequently damages could be awarded only for bruises and contusions. Janice v. Whitley, La.App., Ill So.2d 852, also cited by appellants, is of little weight herein because of the dissimilarity of injury therein involved.
While learned counsel for plaintiff has not sought an increase in the award made below, he nevertheless cites two cases which *455 appear to involve injuries more severe than those with which we are presently concerned. In Attaya v. Zimmerle, La.App., 83 So.2d 676, an award of $7500.00 was reduced to $2500.00 for a moderately severe whiplash injury treated for 7 weeks by the family physician and for an additional three months by a specialist, and where plaintiff still complained of occasional slight restriction of motion 15 months following the accident. In Downs v. Hartford Accident & Indemnity Company, La.App., 116 So.2d 712, an award of $3125.00 was affirmed for a whiplash injury producing limitation of motion evidencing muscle spasm for a period of 8 months following the accident and a physician testified plaintiff would experience intermittent pain for an additional four to six months.
On the other hand, esteemed counsel for appellants cites Elder v. Travelers Indemnity Company, La.App., 125 So.2d 694, wherein the court affirmed an assessment of $750.00 for a mild whiplash injury producing left myositis which resulted in pain for 10 days following the accident and also produced some discomfort for at least a month. Also cited by counsel for appellants is Dowden v. Jefferson Insurance Company, La.App., 153 So.2d 162, in which a jury award of $753.79 for a neck injury resulting in mild muscle spasm and mild limitation of cervical motion for two weeks following the accident, was affirmed on the finding the jury evidently discounted plaintiff’s continued complaints of pain.
We note also the case of Ballard v. National Indemnity Company of Omaha, Neb., La.App., 159 So.2d 763, affirmed by the Supreme Court at 246 La. 963, 169 So.2d 64, in which an award of $1,500.00 was reduced to $750.00 for a cervical injury producing soreness of the neck which lasted for a period of two weeks.
Considering the award made in the instant matter in the light of plaintiff’s injuries as hereinabove set forth, we are unable to conclude the sum allotted was so excessive as to constitute an abuse of the trial court’s discretion. Ballard v. National Indemnity Company of Omaha, Neb., supra.
Accordingly, the judgment of the trial court is affirmed at appellants’ cost.
Affirmed.