GLADNEY, Judge.
This appeal presents counterclaims by two motorists each claiming from the other damages to his automobile incurred in an intersectional 'collision at Alabama and Frederick Streets in Shreveport, Louisiana.
After trial in the lower court, judgment was rendered rejecting the demands of both parties, each of whom has appealed to this Court.
The plaintiff, Louis Brazzel, alleged that on the evening of November 18, 1951, about 7:10 P.M. he was driving his 1949 Ford sedan automobile north on Alabama Street and entered the above-mentioned intersection at a speed of about 20 miles per hour; that after entering said intersection his automobile was struck by a 1949 Plymouth sedan, owned by defendant and driven by defendant’s minor son, Donald W. Farrar. The Plymouth entered the intersection along Frederick Street and was being driven west. Both automobiles were considerably damaged but there were no personal injuries.
In their counterclaims both parties, perhaps through an abundance of caution, charge each other with numerous acts of negligence. By a cautious screening of the complaint we find plaintiff contending young Farrar was negligent in that he was proceeding at an excessive rate of speed and failed to yield the right of way to plaintiff’s car, which had pre-empted the intersection. The defendant urges that plaintiff was negligent by entering the intersection at an excessive rate of speed and by failing to yield the right of way to defendant’s car which entered the intersection from the right. Plaintiff also pleaded the last clear chance doctrine and defendant has charged plaintiff with being contri'bu-torily negligent.
The intersection may be described as being neutral, that is, there are no stop signs or signal lights present. Both streets are approximately 30 feet in width. Near the curb on the southeast corner of the intersection a house, trees and shrubs prevented Brazzel. and young Farrar from seeing each other as they neared the intersection. Shortly after the collision Kenneth D. Boyd, an investigating officer, determined the point of impact approximately in the center of the intersection. His testimony is corroborated by Brazzel and T. W. Farrar.
At the time of the collision the plaintiff was alone in his car. Donald Farrar was accompanied by Connie Thiel, Becky Warner and Benny Toler, all being in their teen-ages. Becky Warner did not testify. There does not appear to have been any other eyewitnesses to the accident.
It is rather interesting to note the testimony of Mr. Brazzel, which we record:
*519 “Q. How far were you from the south curb line of Frederick Street when you first saw the Plymouth sedan? A. I was right in the intersection. There was a house and trees and shruibs, and cars .parked, and I was on an upgrade, and then I was in the intersection.
“Q. Where would you say the front bumper of your car was when you first saw him? A. I had to be in the intersection before I could have seen it.
“Q. Had you passed the curb line? A. Yes.
"Q. How fast were you traveling when you passed the south curb line of Frederick? A. Not possibly over twenty miles an hour, at the most. I was only four or five blocks away and going to the house.
“Q. When you first saw the Plymouth sedan, how far was it from the east curb line of Alabama Street? A. When I first saw it?
“Q. Yes. A. It was so instantly I couldn’t very well judge, for it was right up on me. All I thought of was to stop.
“Q. Had it entered the intersection when you saw it? A. No, if it had have, I would have hit him.
“Q. How far was he from the east curb line of Alabama when you first saw him? A. He was not over ten or fifteen feet away when I first saw him.
“Q. Is that ten or fifteen feet from you or from the curb line ? A. When I first saw him? It is pretty hard to judge at night, but he was not very far. It was so sudden that all I thought of was applying any brakes to miss an accident. I didn’t want my car tore up for I’d much rather have my car * *.
“Q. How much time elapsed from the time you first saw the Plymouth and the impact? How long was it in second ? A. Repeat that.
“Q. How long was it between the time you first saw the Plymouth and the moment of impact? A. Just almost instantly. I didn’t have time to think — just slapped on my brake.”
Donald Farrar, Connie Theil and Benny Toler all testified the Plymouth was struck on the left side by the Ford automobile. Each estimated the speed of the Plymouth at from 20 to 25 miles per hour.
After the collision plaintiff’s Ford was turned back towards and stopped near tíre southwest corner of the intersecting streets, whereas the Plymouth car driven by Farrar turned slightly to the right and came to rest near the curb of the northwest corner of the intersection.
Plaintiff’s testimony and that of defendant’s witnesses is in conflict as to which car first entered the intersection and as to the speed o>f the Plymouth. Brazzel says his car was hit on the right side by the Plymouth, whereas all the other ^witnesses testified the Plymouth was struck on the left side by the Ford. Mr. Boyd expressed the opinion the Plymouth was struck on the left side by the front of the Ford car, whereas Mr. Yancey, who repaired the Ford, testified the damage to that automobile indicated it was struck on the right side. That the left side of the Plymouth was stru,ck by the front of the Ford appears corroborated by the repair bills filed in the record listing the various items for repair and replacement on each of the cars. The repair work for the Plymouth car required a left front door and other repairs on its left side, whereas damage was done to the entire left and right front of the Ford automobile. All of defendant’s witnesses testified the Plymouth car was not traveling in excess of 25 miles per hour when it entered the intersection. There is confirmation of this in that the forward progress of the Plymouth after the collision was only a short distance from the place of impact. We do not think that Mr. Brazzel, in the light of his testimony, quoted above, could have accurately estimated the speed of the Plymouth car. In our opinion both cars were proceeding at a rate of speed of about twenty-five miles per hour when they entered the intersection. The fact that the collision occurred approximately in the center of the intersection is indicative that *520 both cars entered tihe intersection at approximately the same time. It is also clear that neither driver saw the other until they reached the intersection 'because of obstructions to their views across thé southeast corner.
As the intersection is one that has not been regulated 'by the Shreveport traffic ordinance, it is governed by the state highway regulatory act, which provides that where neither of two intersecting streets or highways is given the right of way over the other, the vehicle approaching the intersection from the right has the right of way over a vehicle approaching the intersection from the left. LSA-R.S. 32:237 A. In this instance, therefore, the Farrar car was by law given the right of way over a vehicle approaching the intersection from his left at approximately the same time. As a consequence of this it was incumbent upon Brazzel to accord to Farrar the right of way unless it can be said that Brazzel pre-empted the intersection. In Sheehan, v. Hanson-Flotte Company, La.App., 1948, 34 So.2d 657, 658, in discussing the meaning of pre-emption, the Court said:
“Where two vehicles approach an intersection at proper speeds and with exercise of ordinary precautions and one enters sufficiently in advance of other to justify belief that it may continue across without danger, it has ‘pre-empted’ the intersection and may so continue regardless of fact that other has approached from right and would have had right of way but for advanced position of the first.”
The evidence indicates clearly to us that Brazzel did not enter the intersection ahead of young Farrar, but on the contrary, since a preponderance of the evidence shows that the Plymouth was struck on the left side, the Farrar car entered the intersection in advance of the Brazzel car, though probably only by a few feet.
Clearly this is a case where Brazzel, the plaintiff, should have yielded the right of way to the driver of defendant’s car as it approached him from the right at approximately the same time. His failure to do so, in our opinion, was the proximate cause of the accident.
This is not a case which calls for application of the last clear chance doctrine. It appears to us that neither party had an opportunity to avoid the collision after becoming aware of the other's presence in the intersection.
The judgment appealed from is affirmed insofar as it rejects the demands of plaintiff, Louis Brazzel, against the defendant, T. W. Farrar, and is reversed insofar as it rejects defendant’s reconventional demand against plaintiff, and it is ordered that judgment be entered in favor of T. W. Farrar and against Louis Brazzel in the sum of $238.66, with legal interest from judicial demand until paid, with costs, including cost of appeal.