LANDRY, Judge.
This suit arises from an intersectional automobile accident which occurred at the corner of Magnolia Street (which runs from east to west) and Laurel Street (which runs in a northerly-southerly direction) in Amite City, Louisiana, on Sunday, September 6, 1959, at approximately 12:30 P.M.
The collision transpired when a 1959 Chevrolet (owned and being driven southerly along Laurel Street by one Rufus Stevens) struck the right rear wheel of plaintiff’s 1951 Chevrolet Carry-All (a type of station wagon somewhat resembling a truck) being driven westerly along Magnolia Street by plaintiff’s 15 year old son, Jonathan Bickham, the point of impact being in the northwest quadrant of the intersection in question.
Plaintiff having requested a jury trial of his action to recover from defendant Audubon Insurance Company (Stevens’ liability insurer) the cost of repairing his damaged vehicle as well as damages for personal injuries sustained by plaintiff’s said son, has taken this appeal from the judgment of the trial court rejecting said demands upon the jury finding young Bickham guilty of contributory negligence.
It is undisputed that the situs of the accident is within a school zone posted with the usual signs indicating a maximum legal speed of 15 miles per hour. It is also con *61 ceded by all parties that at the time of the accident neither street was favored by express municipal ordinance and there was no stop sign facing either motorist involved herein.
Under the foregoing circumstances it is clear that Stevens enjoyed the right of way since he was approaching the intersection from the right of the Bickham lad. LSA-R.S. 32:237, subd. A; Travelers Ins. Co. v. Great American Indemnity Co., La. App., 113 So.2d 815; Rhodes v. Rowell, La. App., 106 So.2d 820; Weidner v. Globe Indemnity Co., La.App., 98 So.2d 566; Brazzel v. Farrar, La.App., 61 So.2d 517.
Plaintiff maintains the sole proximate cause of the accident was the negligence of Stevens in exceeding the speed limit, failing to maintain a proper lookout and failing to accord young Bickham the right of way after Bickham had lawfully preempted the intersection. On the other hand, defendant contends the sole proximate cause of the accident was the negligence of Bickham in failing to maintain a proper lookout, failing to stop before entering the intersection and failure to accord Stevens the right of way to which the latter was entitled.
The only witnesses to the mishap were the drivers of the respective vehicles, neither of whom had a guest passenger. A most unusual feature of this case is the fact that there is very little dispute between the drivers as to the manner in which the accident occurred.
Jonathan Bickham testified he was proceeding westerly along Magnolia Street to visit his uncle who lived nearby. He approached the intersection at a rate of speed estimated to be about 15 to 20 miles per hour. There being no stop sign confronting him, he did not bring his vehicle to a halt. Before reaching the corner he glanced first to his left and then to his right and observing no traffic approaching from either direction proceeded into the intersection at approximately 15 miles per hour. At no time did he see the oncoming Stevens vehicle until his attention was directed thereto by the squeal of Stevens’s brakes. Upon hearing the noise of the brakes he glanced out of the window of his vehicle, observed the Stevens automobile immediately upon him and instantly the collision occurred. At the time of impact he was positive that the front end of his vehicle had passed completely through the intersection.
Defendant’s insured, Stevens, testified he was proceeding southerly along Laurel Street at a speed of 25 or 30 miles per hour in the right southbound lane (the westernmost travel lane) and upon approaching the intersection suddenly observed the carry-all emerge from behind heavy shrubbery at the northeast corner of the intersection (the McClendon property) and proceed across the intersection. He immediately applied his brakes but was unable to avoid striking the Bickham vehicle, the front of his vehicle striking the carryall at the approximate center of the right rear wheel of the latter vehicle.
In support of his contention the accident was caused by excessive speed on the part of Stevens, plaintiff relies principally upon the fact that the Stevens vehicle, by actual measurement left 50 feet of skid marks prior to the point of impact and traveled an additional eight feet after striking the carry-all. On this same issue, plaintiff points to the fact that following the impact the carry-all executed a complete 180 degree turn, traveled a distance of 41 feet westerly along Magnolia Street and came to rest in a ditch on the south side thereof. From the foregoing plaintiff concludes the speed of the Stevens vehicle was clearly excessive despite the fact the evidence shows that although the front portion of the Stevens car struck the carry-all, the headlights of the Stevens vehicle were not broken.
The basis of plaintiff’s entire position is preemption of the intersection in question. It cannot be denied the settled jurisprudence of this state is to the effect that a motorist who preempts an intersec *62 tion thereby gains the right of way and that a motorist on a favored street is, under .such circumstances, required to yield the superior right of passage he may have otherwise enjoyed. Enga v. Southern Bell Telephone & Telegraph Company, La.App., 104 So.2d 275; Booth v. Columbia Casualty Company, 227 La. 932, 80 So.2d 869; Gauthier v. Fogleman, La.App., 50 So.2d 321.
Likewise, it cannot be disputed it is the rule in this state that to legally preempt an intersection the motorist on the inferior street must enter at a time that he may reasonably expect to clear same without interfering with oncoming traffic and that a driver does not acquire legal preemption by dashing into an intersection ahead of a motorist on the favored thoroughfare when such other motorist is so near the intersection as to make entry dangerous. Oswalt v. Transcontinental Insurance Company of New York, La.App., 96 So.2d 233; Aucoin v. Houston Fire & Casualty Company, La.App., 44 So.2d 127; Flowers v. Indemnity Ins. Co. of North America, La.App., 42 So.2d 132; Hooper v. Toye Bros. Yellow Cab Co., La.App., 50 So.2d 829.
In the Oswalt case, supra, we note the following language which we consider peculiarly appropos the case at bar.
“The law of our state (LSA-R.S. 32:237, subds. A and B) is to the effect that when neither street has been specifically designated a right of way street, and when two vehicles approach or enter the intersection at approximately the same time the car approaching from the right shall be favored and shall have the right of way. This rule in this particular case, would give the defendant the right of way. Another" rule of our state is that the person who preempts an intersection shall have the right of way. This rule, however, is based upon the fact that at the time of entering the intersection, the party had a reasonable possibility of clearing the right of way without interfering with oncoming traffic. Certainly under the facts of this case the right of preemption does not apply to the plaintiff. In the Gautreaux case [Gautreaux v. Southern Farm Bureau Casualty Co., La.App., 83 So.2d 667] this court stated as follows:
“ ‘In the everyday world, ordinarily prudent motorists on the main thoroughfare do not slow before each corner and attempt to peer down the side-streets, but instead concentrate most of their attention on the path ahead, relying on their legal “right of way”. Legislative provisions for right of way are to facilitate the passage of traffic in this congested twentieth century world. If to accomplish this purpose, and in realization that even observing the path ahead may tax the ordinary motorists’ powers of sustained observation, the legislature has relieved the motorist on the right of way street of a duty ordinarily to slow before each intersection (and, consequently, of a duty to take this attention from the path ahead by darting glances each way down the intersecting streets), appellate courts should not supply artificial standards in an unrealistic attempt to allocate damages after an accident has occurred.’ (83 So.2d 669)
“Under the facts of this case, as the Jacobsen automobile was approaching from the right, it was afforded the right of way, Miss Jacobsen, therefore, was given the legal right to presume that any motorist approaching the intersection from her left would respect her right of way.” [96 So.2d 234]
It is a fundamental principle of law that each case must be decided in the light of its own peculiar facts and circumstances. This legal concept is so well established that no citation of authority in support thereof is deemed necessary.
Pretermitting all consideration of the negligence of Stevens, we conclude as did the trial jury that contributory negligence *63 on the part of the Bickham youth is clearly established by the evidence.
That Stevens enjoyed the right of way at the intersection in question is not denied but rather is conceded by plaintiff herein.
Although there is some dispute concerning the degree to which vision was impeded by the presence of shrubbery on the property of Dr. McClendon (situated at the northeast corner of the intersection), we conclude the evidence as a whole shows that the view of both Stevens and Bickham was materially affected thereby and that to all intents and purposes the intersection was indeed a “blind intersection”.
Dominick Cuti (a city police officer) testified he investigated the accident shortly after its occurrence. He was familiar with the intersection and stated that because of the presence of large azaleas (commencing at the corner and extending northerly along the east side of Laurel Street as well as easterly along the north side of Magnolia Street) there was such impediment of view that ordinarily a motorist proceeding southerly along Laurel or westerly on Magnolia should stop before entering the intersection. He testified positively there was indeed an obstruction of vision resulting from this condition and that subsequent to the accident Dr. McClendon caused said shrubbery to be trimmed to alleviate the hazard occasioned thereby.
Defendant’s assured, Stevens, testified that the property of Dr. McClendon situated at the Northeast corner of the intersection was approximately one foot elevated above the level of the street and that the azaleas extended from the corner approximately two hundred feet both easterly and northerly. According to Stevens the shrubbery in question was planted between the sidewalk and the edge of the street, some of the plants extending to within approximately one foot of the black topped portion of the roadway. He estimated the height to the azaleas to be between five and six feet above street grade and conceded that whereas they were “spotty” and did not form a continuous hedge they nevertheless constituted a serious impediment of view.
On the contrary plaintiff produced witnesses who testified the offending azaleas were only four to four and one-half feet in height and although they extended in both directions from the corner they did not render the corner a “blind intersection”.
The Bickham lad testified that before reaching the corner he looked first to his left then to his right through a break or gap in the shrubbery which afforded him a view of approximately one-third of the block of Laurel Street to the North and, observing no traffic approaching from either direction, continued into the intersection without either stopping or again observing for approaching traffic. He further testified that after having looked once before reaching the corner and noting no traffic he saw no need to look again before entering the intersection. Bickham could not state how far he was from the corner when he looked for vehicles on Laurel Street and frankly admitted that after once looking he neither stopped nor looked again. Therein, we believe, under the circumstances of this case, lies his contributory negligence. In view of the situation with which he was confronted it was incumbent upon Bickham to bring his vehicle to a halt before attempting to negotiate a virtually blind intersection inasmuch as his testimony reveals that after having passed the point at which he could see to his right through the shrubbery he did not again have an unobstructed view in that direction until he entered the intersection. Under such circumstances it was manifestly incumbent upon him to stop at the corner and again observe for traffic approaching from the right prior to entering the intersection. Had he taken the precaution of stopping at the comer the accident may not have occurred and certainly would not have occurred as it did considering the testimony of Stevens to the effect that had he, Stevens, not applied his brakes he would have enter *64 ed the intersection ahead of the Bickham youth.
The testimony of young Bickham himself shows that, from the point at which he made his observation before proceeding into the intersection, he could see only a limited portion of the block of Laurel Street to his right and it was in this direction that his greatest duty of observation lay considering he was legally required to yield the right of way to vehicles proceeding southerly along Laurel Street. After passing the point at which he could see through the shrubbery to his right he proceeded an undisclosed distance to the corner during which interval he had very little, if any, view of traffic approaching from that direction. Undoubtedly, during this interval Stevens approached the intersection and had Bickham stopped and looked again he would have observed Stevens. The record is clear that Stevens saw Bickham as soon as the vehicle of the latter emerged from behind the shrubbery. It is equally clear that Stevens is the only one who made any attempt to avoid a collision and that Bick-ham never saw the Stevens car until the noise of Stevens’ brakes attracted his attention thereto.
• We are convinced that although Bickham did in fact enter the intersection first in point of time, he did so at a time when the Stevens vehicle was so close as to make his entry therein dangerous. To legally preempt the intersection it was incumbent upon him to determine, upon proper observation, that it was reasonably safe to do so and that such maneuver could have been executed without interfering with traffic approaching from the right. In the case at bar the fact that he was struck in the far side of the intersection is of no moment. Stevens observed him entering the intersection as soon as it was possible for him to have done so, namely, at the moment Bickham came into view after passing the shrubbery. The skid marks commencing SO feet from the point of impact establish beyond doubt that Stevens was within approximately 75 feet of the intersection when he observed the Bickham vehicle and applied' his brakes. Had Stevens not observed the carry-all and applied his brakes he would have either been struck on his left side by the front of the Bickham car or would have struck the Bickham vehicle near the front end thereof since he was traveling at approximately double the speed of Bickham.
Plaintiff complains of alleged error on the part of the trial court in giving the jury special charges Numbers one, three, four, five, nine and twelve requested by defendant. Although learned counsel for plaintiff states in his brief said charges are not correct statements of law and therefore confused and misled the jury, he fails to set forth the particular inaccuracies or the precise manner in which the jury was thereby confused or misled. We have searched the record numerous times and fail to find therein evidence of special charges requested by either plaintiff or defendant. Although we note in the record plaintiff’s objection to said charges, it does not appear that same were filed in or made part of this proceeding.. In view of this circumstance there is nothing which this court may review.
Affirmed.