LANDRY, Judge.
This action arises out of an intersectional automobile accident which occurred on December 6, 1959, a short distance outside the city limits of Hammond, Louisiana, at the junction of Easy and Iowa Streets, which thoroughfares intersect each other at right angles.
Plaintiff, Helen Tuger, accompanied by her guest passengers, W. M. Stevens, Mrs. Irene Troyan and the minors, David and Frances Troyan, was proceeding easterly on Iowa Street, a two lane, gravel street, while defendant, Mrs. Irene Davis (insured of defendant, Audubon Insurance Company) was driving northerly on Easy Street, a two lane blacktopped street. The accident occurred in the southeast quadrant of the intersection, the front of defendant’s 1959 Ford automobile striking the right side of plaintiff’s 1953 Chevrolet.
The several plaintiffs herein are: (1) John Tuger, husband of Mrs. Helen Tuger, who seeks recovery of damages to the *356 Tuger vehicle; (2) Mrs. Helen Tuger, who asks damages for personal injuries; (3) Mrs. Irene Troyan, who prays for judgment for personal injuries; (4) Andrew Troyan (husband of Mrs. Irene Troyan and father of the minors, David and Frances Troyan), who, although not a passenger in the Tuger vehicle, sues in his individual capacity, for medical expense incurred in treatment of the injuries sustained by his wife and children and additionally litigates in his representative capacity as administrator of the estates of his said minor children seeking recovery for injuries sustained by them in the accident.
Defendant’s insurer, Audubon Insurance Company, filed a reconventional demand praying for judgment for the amount of property damage to defendant’s automobile paid by said insurer under its collision policy covering the Davis vehicle, to which claim Audubon was duly subrogated. In addition, Audubon filed a third party demand against Allstate Insurance Company, liability insurer of the Tuger vehicle. To said third party demand, defendant therein, Allstate filed: (1) a plea of prescription; (2) an exception of no cause of action based on the contention that at the time of defendant’s filing the third party petition such a demand was not available among alleged joint tort-feasors unless they were sued jointly; and (3) an exception of no right of action predicated upon certain releases taken from plaintiffs by the alleged co-tort feasor, Allstate.
The trial below resulted in judgment in favor of all plaintiffs excepting W. M. Stevens, occupant of the Tuger vehicle, whose claim was rejected. The reconven-tional demand of Audubon Insurance Company was also rejected by the court below. It appears that the third party demand of Audubon was not passed upon by the trial court and is not urged on appeal. It follows that said demand may not be considered by this court.
Defendants, Audubon Insurance Company and Mrs. Irene Davis, have appealed. None of the plaintiffs have appealed or answered defendants’ appeal. The failure of plaintiff, W. M. Stevens, to appeal precludes our review of the judgment of the trial court rejecting his demands.
In substance plaintiffs allege the accident in question resulted solely by virtue of the negligence of Mrs. Davis in the following respects: (1) traveling at an excessive speed; (2) failure to maintain a proper lookout; and (3) failure to accord Mrs. Tuger the right of way which the latter allegedly acquired by preemption, it being conceded the intersection in question was not controlled by either stop sign or signal ■ light.
In defense of plaintiffs’ actions, defendants maintain Mrs. Davis was free of negligence and that the sole proximate cause of the collision was the negligence of Mrs. Tuger in traveling at an excessive speed, failure to maintain a proper lookout, failure to have her vehicle under control, and failing to accord Mrs. Davis the right of way to which she was entitled considering the latter approached the intersection from the former’s right. Alternatively, defendants contend Mrs. Tuger was guilty of contributory negligence in the foregoing respects.
Defendants, in brief, advance three specifications of error, namely: (1) The trial court erred in holding Mrs. Davis guilty of negligence constituting a proximate cause of the accident; (2) The lower coui't fell into error in concluding that Mrs. Tuger was free of negligence and contributory negligence proximately causing the accident; arid (3) the court below erred in admitting the testimony of Dr. Eric Lensgraf, a chiropractor, who had not been qualified as an expert witness.
The contending parties are, for all practical purposes, in agreement concerning the occurrence of the accident except as hereinafter otherwise noted.
Defendant, Irene Davis, testified she has had 20 years driving experience. At the *357 time of the accident she was proceeding from her home situated on Easy Street approximately one-half block south of the intersection of Iowa Street. She was traveling approximately 15-20 miles per hour in the right northbound lane. As she approached the intersection she observed no approaching vehicle notwithstanding she looked both right and left. She was fully aware of the presence of a small store building situated near the southwest corner of the intersection (to her left, the direction from which the Tuger vehicle was approaching) and knew that the building obstructed, to some extent, her view to the west. Mrs. Davis frankly admitted that she did not see the Tuger Chevrolet until the moment of impact. Her car pushed the Tuger automobile toward the northeast corner of the intersection at which point the Chevrolet turned over on its left side in the ditch near the end of a culvert. Mrs. Davis recalled little else regarding the occurrence of the accident.
Mrs. Helen Tuger, testified she was proceeding slowly eastward on Iowa Street at an estimated speed of 15 miles per hour or less. Her testimony is unequivocally to the effect that she first saw the approaching Davis vehicle when she, Mrs. Tuger, was in the approximate center of the intersection and at this time the Davis car was then approximately 100 feet distant. Believing that she had ample time to pass through the intersection she accelerated slightly and was struck when she had virtually completed the intersection. The Davis Ford struck her car toward its right rear. Following the impact the Davis car continued to push her automobile toward the northeast corner of the intersection. Eventually her automobile went into the ditch and tipped over on its left side.
William M. Stevens, 78 year old guest passenger seated on the front seat of the Tuger vehicle, in substance testified his host driver was proceeding at approximately 20 miles per hour. As did Mrs. Tuger he also testified that when the Chevrolet was approximately half way through the intersection he observed the Davis Ford approximately 100 feet distant. Stevens- felt the impact near the rear of the vehicle. He also stated the store building did not prevent either driver from seeing the other vehicle approaching.
Mrs. Irene Troyan testified she was seated on the left side of the rear seat of the Tuger automobile with her children, Frances and David. After the Tuger automobile entered the intersection, Mrs. Troyan noted the approaching Davis car. Concerning the distance of the Davis vehicle she stated: “Well, I doubt if she was 100 feet, around between that, or a little bit over.” At various times in her testimony she estimated the Davis car was from 75 to 125 feet distant when she observed it. Mrs. Troyan could not estimate Mrs. Davis’ speed.
Frances Troyan, who was approximately 14 years of age at the time of the accident and 16 at the time of trial, testified she was seated on the right side of the rear seat of the Tuger vehicle. Before Mrs. Tuger entered the intersection Frances observed the Davis car through the trees behind the small store situated near the southwest corner of the intersection. She did not again see the Davis car until after the impact. She conceded she did not call Mrs. Tuger’s attention to the approaching vehicle as she did not consider it necessary.
J. C. Willie, Trooper, State Police, stated he investigated the accident and found that the Tuger vehicle was struck on its right side after it had almost cleared the intersection. He stated that he observed skid marks approximately 3 feet in length made ,by the Davis vehicle. He conceded his report made no mention of skid marks by either vehicle but that he recalled that fact from memory.
The record in the present case clearly establishes that the Tuger automobile entered the intersection first and was struck on its right side from about its center *358 toward the rear of the vehicle. Defendant, nevertheless, maintains Mrs. Davis had the right of way and that Mrs. Tuger should have yielded considering the law of this state provides that at uncontrolled intersections the driver approaching from the right enjoys the right of way (See LSA-R.S. 32:237, subd. A before amendment and LSA-R.S. 32:121, subd. B of the Highway Regulatory Law enacted in 1962). On the other hand, however, plaintiffs maintain that Mrs. Tuger having entered the intersection ahead of the Davis car lawfully preempted the intersection and Mrs. Davis should have deferred.
As stated by our Supreme Court in the recent case of Smith v. Borchers, 243 La. 746, 146 So.2d 793, in cases of this nature the court must consider the locus in quo, the physical facts and the testimony of the witnesses in arriving at a decision regarding negligence of the parties involved.
Our careful consideration of the evidence in the case at bar, when related to the physical facts (the point of impact and the parts of the vehicles which came in contact with each other) leads to the conclusion that both drivers were guilty of negligence proximately causing the accident. Mrs. Davis’ testimony is clear beyond all doubt that she did not see Mrs. Tuger prior to the accident. She did not testify that she applied her brakes as indicated by Trooper Willie. In this regard we cannot but conclude Trooper Willie was mistaken in attributing any skid marks observed as having been made by the Davis car. Mrs. Davis repeatedly testified she did not see Mrs. Tuger prior to the actual impact. Under such circumstances we must conclude that she had no reason to and did not apply her brakes. Clearly she was negligent in not observing the Tuger vehicle which had entered the intersection before her and had proceeded across a portion thereof. It is obvious from the record that Mrs. Davis was not keeping a proper lookout.
By the same token Mrs. Tuger was equally guilty of not maintaining a proper lookout. Obviously she was mistaken (as also was Mr. Stevens) in her testimony to the effect that when she was halfway through the intersection the Davis car was still approximately 100 feet distant. Had Mrs. Tuger proceeded to the approximate center of the intersection when Mrs. Davis was yet 100 feet distant the accident could not possibly have occurred. It is clear from the record that neither motorist was speeding. Both were proceeding at approximately the same rate of speed. Mrs. Tuger would have certainly cleared the intersection without incident had she reached its center when Mrs. Davis was still 100 feet distant. The conclusion is inescapable that although Mrs. Tuger did in fact enter the intersection first, she did so when the approaching Davis vehicle was so near that Mrs. Tuger’s entry was patently dangerous. Mrs. Tuger’s testimony leaves no doubt that either she did not look to her right or that if she did look, she failed to see the obvious — namely, the approaching Davis automobile. Much stress is laid by counsel for appellees on the fact that Mrs. Tuger had attained the southeast quadrant of the intersection before being struck. From this, counsel argues that she had preempted the intersection and Mrs. Davis should have yielded the right of way.
The answer to the foregoing contention is that to lawfully preempt right of way pursuant to the statutory authority applicable to the instant case, the motorist relying upon preemption must do so only after observation and determination that he may enter and reasonably expect to clear without interfering with oncoming traffic. Bickham v. Audubon Insurance Company, La.App., 130 So.2d 60. We are not here concerned with an intersection controlled by a stop sign or signal light on which the motorist may rely as granting him the right of way. It was incumbent upon plaintiff to maintain a lookout, es *359 pecially to her right as she was required to yield to all traffic approaching from her right and intending to enter the intersection at approximately the same time. Although Mrs. Tuger did in fact enter first, she nevertheless did so without looking. In so doing, she was guilty of patent negligence. The evidence reflects the presence of a small building near the southwest corner of the intersection. Pictures in evidence, however, show the structure to be situated such that both Mrs. Tuger and Mrs. Davis could have seen the other before entering the intersection had they been maintaining a careful lookout. Had Mrs. Tuger looked to her right before entering the intersection there appears no reason why she could or should not have seen Mrs. Davis.
From the foregoing, it follows that as regards the claim of Mrs. Tuger, defendant’s plea of contributory negligence is well founded. It also follows that the judgment of the trial court in favor of Mrs. Tuger must be set aside.
The evidence shows Mrs. Tuger was engaged in a community mission at the time of the accident. Under the circumstances, her contributory negligence bars recovery of her husband, John Tuger, for damages sustained to the Tuger automobile involved in the accident. Therefore, the judgment of the trial court in favor of plaintiff, John Tuger, must also be rescinded and set aside. Martin v. Brown, 240 La. 674, 124 So.2d 904; Smith v. Borchers, La.App., 138 So.2d 231; 243 La. 746, 146 So.2d 793.
As a result of the accident, Mrs. Irene Troyan sustained relatively minor injuries consisting of bruises and contusions, principally a severe bruise on her left leg from which she suffered considerable pain for a period of several weeks. She also allegedly sustained a neck injury of undetermined nature as will hereinafter appear.
Dr. Clifford Aycock, a general practitioner, examined Mrs. Troyan on December 7, 1959, the day following the accident. He found injuries consisting primarily of general soreness and rather extensive but not particularly severe bruises. He saw Mrs. Troyan on four occasions and discharged her January 20, 1960. He prescribed analgesics similar to aspirin for her pain and also gave symtomatic treatment. His fee for services rendered Mrs. Troyan was $14.00. Dr. Aycock was positive that Mrs. Troyan never complained to him of a neck injury.
Mrs. Troyan testified her injuries consisted of bruises (especially to her left leg which was so severe she dragged her leg for several weeks), a neck injury and a slipped disc. She concedes she did not mention her neck injury to Dr. Aycock but consulted Dr. Lensgraf, a chiropractor in Hammond, Louisiana, whom she visited approximately 11 times for treatment. She testified further she was still under occasional treatment by Dr. Lensgraf at the time of trial. It is to be noted that except for Mrs. Troyan’s own testimony, there is no evidence of record to support her claim to a slipped cervical disc. It is to be further noted that the chiropractor, Dr. Lens-graf (whose testimony will hereinafter be considered in detail) did not characterize Mrs. Troyan’s injury as a slipped disc but rather as a subluxation. The trial court awarded Mrs. Troyan $1,100.00 and in view of the circumstances shown, we believe the award excessive. Our consideration of the nature and extent of Mrs. Troyan’s injuries leads to the conclusion that an award of $500.00 will adequately compensate her for the injuries sustained in the accident and the pain, suffering and discomfort resultant therefrom.
Frances Troyan testified that she was injured in the accident. The following day she experienced some soreness which continued for approximately one week.
*360 Dr. Aycock examined Frances the day after the accident and found that she sustained a relatively mild whiplash injury. He prescribed aspirin and heat treatment. Dr. Aycock saw her on the aforesaid occasion only and assumed her symptoms would abate within a week. The trial court awarded judgment in the sum of $100.00 for the injuries sustained by Miss Troyan and we consider the award neither excessive nor inadequate.
David Troyan, who was 8 years ■old .at the time of the accident, testified his left knee was hurt in the accident and pained him for approximately two days. Dr. Aycock examined David the day after the accident and found a mild contusion of the child’s left knee. No treatment was prescribed by Dr. Aycock because no treatment was considered necessary. Dr. Ay-cock stated that with respect to David’s injuries the findings were minimal. For said injuries the trial court awarded recovery in the sum of $100.00 which amount we consider proper under the circumstances shown.
Excepting the hereinafter discussed testimony of Dr. Eric Lensgraf, chiropractor, there is no further evidence of record to support the complaints of petitioners.
During the trial plaintiff introduced the testimony of Dr. Lensgraf to which defendant promptly objected on the grounds, first that under our jurisprudence chiropractors are considered to be practitioners of medicine contrary to and in violation of state laws which require all medical doctors to obtain a license from the State Board of Medical Examiners, consequently, Dr. Lensgraf is not and cannot be considered a medical expert. Secondly, defendant complains the trial court denied his counsel opportunity to examine Dr. Lensgraf on his medical qualifications.
Although counsel for plaintiff concededly did not attempt to qualify Dr. Lensgraf as a medical expert and did not offer his testimony as an expert witness, nevertheless considerable time was spent in eliciting the witness’s training and experience as a chiropractor. In substance Dr. Lensgraf testified that he examined Mrs. Troyan, Frances Troyan and David Troyan on the day of the accident. He testified at some length concerning his findings and gave opinion evidence regarding the nature and extent of the injuries sustained by these plaintiffs, all of which was objected to by counsel for appellants.
Under the circumstances attending the present case, it is not necessary for us to decide whether a chiropractor may or may not be qualified as a medical expert in this state. As previously stated, learned counsel for plaintiffs expressly refrained from qualifying or offering Dr. Lensgraf as an expert in the field of medicine. Under such circumstances the trial court should have excluded any opinion evidence sought to be given by the witness. Considering he was neither qualified nor tendered by counsel as an expert, he was not entitled to give opinion evidence. A witness not qualified and tendered as an expert must be treated in the same manner and his testimony accorded only such weight as is ordinarily afforded that of any other lay witness. 32 C.J.S. Evidence § 458, page 97; 20 Am.Jur., Evidence, Page 659, Par. 786.
Since Dr. Lensgraf was not offered as an expert medical witness and his findings and diagnoses depend entirely upon specialized skills, training and knowledge which he was not properly shown to possess before being permitted to testify regarding such matters, it follows they can have no more weight than if testified to by a layman. Moreover, since these matters concern fields of medicine regarding which no lay witness may testify, the testimony in question cannot be considered by the courts.
The transcript in the present case discloses that during the course of the trial counsel for appellants, pleading surprise in that he declared he had just then *361 learned for the first time that plaintiffs, Mr. and Mrs. Troyan, had settled their respective claims as well as those of their two minor children, Francis and David, by acceptance of the sum of $270.00 from Allstate in full settlement thereof, requested permission of the trial court to amend appellants’ answers to plead said release in discharge of plaintiffs’ claims. In this connection appellants contended first that the release operated as a full discharge of any and all claims against appellants and, alternatively, that the said sum received be credited against any judgment obtained against appellants.
In effect the trial court granted defendants’ motion to amend by permitting defendants to introduce the release in question notwithstanding appellees’ objection on the ground that the photostatic copy of release offered by appellants was inadmissible under the best evidence rule. Our learned brother below ruled that while he would not reduce the amount of. his award to the extent of the settlement indicated by the release, he would, nevertheless, in computing the awards due said plaintiffs, consider the fact that said plaintiffs received prior compensation for their injuries and losses.
On appeal esteemed counsel for appellee argues that while the record does not reflect his objection to introduction of the release on the ground that payment was not specially pleaded by defendants, nevertheless, he did, in the trial court object on that ground. In this regard, counsel for appellee contends the trial court improperly admitted the release and that upon authority of Campbell v. Clark, La.App., 43 So.2d 553, and cases therein cited, this court cannot consider the issue thus raised.
As contended by learned counsel for appellees our jurisprudence is settled to the effect that special defenses such as payment, release, novation or other defense tending to show extinguishment of an obligation admitted or proved must be specially pleaded. See Campbell v. Clark, supra, and cases therein cited.
Although the record does not reflect appellees’ objection to introduction of the release on the ground that neither payment nor release was specially pleaded by defendants, it does show that appellees’ counsel repeatedly and vigorously objected to introduction of the release on the ground that the photostatic copy sought to be introduced in evidence violated the best evidence rule. In permitting its introduction under such circumstances, we believe our esteemed brother below fell into error. Plaintiffs having failed to allege the special defense of payment and release should not, in the face of defendants’ objection, have been permitted to introduce evidence thereof. It follows that defendants are not entitled to credit for the sum previously received by plaintiffs.
For the reasons hereinabove assigned, it is ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiffs-appellees, John Tuger and Helen Tuger, against defendants, Irene Davis and Audubon Insurance Company, be and the same is hereby annulled, reversed and set aside and judgment rendered herein in favor of defendants, Irene Davis and Audubon Insurance Company, and against plaintiffs, John Tuger and Helen Tuger, dismissing and rejecting said plaintiffs’ demands.
It is further ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiff, Mrs. Irene Troyan, and against defendants, Irene Davis and Audubon Insurance Company, in the sum of $1,100.00 be and the same is hereby amended and revised in that said award is reduced to the sum of $500.00.
It is further ordered, adjudged and’ decreed that except as herein reversed or amended the trial court’s judgment is, in all other respects, affirmed.
Amended in part, reversed in part, affirmed in part and rendered.